JOHN DOE[1] *vs.* ATTORNEY GENERAL & another.[2]

Suffolk. September 5, 1997. - November 17, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Privacy. *Due Process of Law,* Sex offender. *Privacy.*

This court held that a person who was automatically classified as a tier one offender under the sex offender act, G. L. c. 6, §§ 178C-178O, by reason of his conviction of indecent assault and battery on a person fourteen or older (G. L. c. 265, § 13H), and who was thus subject to the act's registration and notification requirements, has sufficient privacy and liberty interests constitutionally protected by art. 12 of the Massachusetts Declaration of Rights that he is entitled to procedural due process, that is, a hearing and a determination as to whether he must register under the act and, if so, whether sex offender information concerning him should be available upon request. [140-146] FRIED, J., concurring, with whom ABRAMS & MARSHALL, JJ., joined.

CIVIL ACTION commenced in the Superior Court Department on September 30, 1996.

The case was reported to the Appeals Court by *Patrick J. King,* J., on a statement of agreed facts. The Supreme Judicial Court granted an application for direct review.

*John P. Ward* (*Mary Lisa Bonauto* with him) for the plaintiff.

*Jane L. Willoughby,* Assistant Attorney General (*Peter Sacks,* Assistant Attorney General, with her) for the Attorney General & another.

*Carol A. Donovan* & *John Reinstein,* for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

WILKINS, C.J. Before us, on a report by a judge of the Superior Court on a statement of agreed facts, are challenges to the constitutionality of the registration and notification requirements

---

[1] A Superior Court judge made findings and allowed the plaintiff's motion to proceed as John Doe and to impound papers that identify him.

[2] The Criminal History Systems Board.

of the sex offender act (G. L. c. 6, §§ 178C-178O) as applied to the plaintiff who has been convicted of indecent assault and battery.

The plaintiff contends that the act's automatic classification of him as a level one sex offender deprives him of procedural due process in violation of the State and Federal Constitutions. He also argues that the act as applied to him constitutes punishment in violation of State and Federal guarantees against ex post facto laws, double jeopardy, and cruel and unusual punishment. We agree with the plaintiff that the act denies him procedural due process guaranteed by the Constitution of the Commonwealth. The act fails to grant him a hearing and fails to require a finding, if a hearing is held, as to whether he presents a risk to children and other vulnerable persons for whose protection the Legislature adopted the registration and notification requirements of the act. We do not reach the question whether the act imposes constitutionally impermissible punishment on the plaintiff.[3]

1. *Facts.* In 1990 Doe pleaded guilty in a District Court to

---

[3]We have indicated that furnishing sex offender information, except in circumstances that serve the act's remedial purposes, might constitute constitutionally impermissible punishment as to a person convicted of a sex crime committed before the act's effective date. See *Doe* v. *Attorney Gen. (No. 2),* 425 Mass. 217, 221-222 (1997); *Opinion of the Justices,* 423 Mass. 1201, 1223-1224 (1996).

Claims in other jurisdictions that sex offender registration and notification requirements improperly impose punishment in a constitutional sense have been generally unsuccessful. See, e.g., *Roe* v. *Office of Adult Probation,* 125 F.3d 47, 54-55 (2d Cir. 1997) (ex post facto challenge to notification policy fails); *Russell* v. *Gregoire,* 124 F.3d 1079, 1089, 1092-1093 (9th Cir. 1997) (registration and notification provisions not punishment); *Doe* v. *Pataki,* 120 F.3d 1263, 1275 (2d Cir. 1997) (neither registration nor notification provision is punishment for ex post facto purposes); *E.B.* v. *Verniero,* 119 F.3d 1077, 1105 (3d Cir. 1997) (notification provision not punishment for ex post facto or double jeopardy purposes); *Alan A.* v. *Verniero,* 970 F. Supp. 1153, 1176 (D.N.J. 1997) (notification not punishment); *Doe* v. *Kelley,* 961 F. Supp. 1105, 1111-1112 (W.D. Mich. 1997) (sex offender registration act not punitive); *W.P.* v. *Poritz,* 931 F. Supp. 1199, 1211-1219 (D.N.J. 1996) (registration and notification not punitive); *Doe* v. *Poritz,* 142 N.J. 1, 73 (1995) (act remedial, not punitive); *State* v. *Ward,* 123 Wash. 2d 488, 495 (1994) (registration requirement not punishment for Federal or State ex post facto purposes). Contrast *State* v. *Myers,* 260 Kan. 669, 701-702 (1996), cert. denied, 117 S. Ct. 2508 (1997) (disclosure provision allowing public access to information is punishment for Federal ex post facto purposes); State *vs.* Cook, No. 1-97-21, slip op. at 4 (Ohio Ct. App. Aug. 7, 1997) (retroactive application applies new disabilities in violation of ex post facto provision of State Constitution). Ex

one count of indecent assault and battery (G. L. c. 265, § 13H). The judge imposed a $62 fine and placed the defendant on probation for two years. The complainant in that case was a State police officer on undercover duty at a highway rest area. An adjacent wooded area was reputed to be a locale for consensual sexual activity between males. During the course of this undercover operation, the plaintiff stopped at the rest area and entered the woods. He approached the undercover officer who was standing in the woods. Following a brief, innocent conversation, the plaintiff placed his right hand in the area of the officer's right front trouser pocket and squeezed. The plaintiff then moved his hand to the officer's groin and moved his hand in a circular direction. The officer then identified himself and arrested the plaintiff. The plaintiff had been convicted in 1989 of one count of unnatural acts involving consensual sexual activity in woods near a highway rest area.

The plaintiff, a life-long resident of the Commonwealth, graduated from high school in 1954, served in the United States Marine Corps, and in recent years has been a self-employed carpenter. He is married and has two adult children who in turn have children. They all have lived in the rural community where the children were raised. His wife and children still live there, but, when his wife learned of the 1990 conviction, she asked the plaintiff to leave their home, and he did. The plaintiff asserts that his sexual interests are exclusively oriented to other consenting adults and that he considers himself primarily heterosexual. He would be embarrassed and humiliated if his children, friends, associates, and coworkers knew that he has had homosexual experiences. The plaintiff consistently states that he has seriously considered suicide rather than face the humiliation and disgrace of registering as a sex offender.

The plaintiff has certain beliefs. The defendants do not stipulate that these beliefs are reasonable. The plaintiff believes that (1) any disclosure of his sexual activity with other men will have a devastating effect on his wife, children, and grandchildren, and consequently on him for being the cause of their pain;

---

post facto based challenges solely to registration requirements have been generally rejected. See, e.g., State v. Noble, 171 Ariz. 171, 178 (1992); State v. Manning, 532 N.W.2d 244, 248-249 (Minn. Ct. App. 1995); State v. Costello, 138 N.H. 587, 591 (1994); Van Doren v. Mazurkiewicz, 695 A.2d 967, 976 (Pa. Commw. Ct. 1997); Kitze v. Commonwealth, 23 Va. App. 213, 217, 220 (1996), cert. denied, 118 S. Ct. 66 (1997).

(2) if the fact of his registration becomes known in the community where he lives, he will be subject to scorn, ridicule, and ostracism by his neighbors and will become a social pariah; (3) public dissemination of the fact of his homosexual experiences will cost him many, if not all, of his friendships; and (4) if his carpentry customers learn that his name is on a list of sex offenders, he will find it difficult, if not impossible, to continue in the employ of these customers and to find new work, regardless of how he attempts to explain the presence of his name on the list of sex offenders.

2. *The due process issue.* The major premise underlying the sex offender act is that disclosure of the presence of a sex offender in a particular community will help protect minors and other persons vulnerable to becoming victims of sex crimes. The extent of the disclosure varies in proportion to the risk that an offender will reoffend: the greater the risk, the greater the disclosure. The sex offender act prescribes procedures that must be followed if an offender is to be subjected to the broader disclosures applicable to persons in the moderate (level two) and high (level three) risk classifications. This case does not, however, involve a constitutional challenge to the procedures applicable to the two highest risk levels. This case is presented on the assumption that the plaintiff will be classified as a low level (level one) offender.

The plaintiff's due process challenge is to the absence of any statutory procedure that would permit or require a determination that a low level sex offender should not be required to register at all. Relying on assertions of State and Federal rights to procedural due process of law, the plaintiff contests the Legislature's determination that a level one offender must register and have the record of his convictions publicly available, without first having the right to a hearing to assess whether he is likely to harm the persons the sex offender act seeks to protect. The plaintiff argues that neither the manner in which he committed the crime of indecent assault and battery, nor any other circumstance, justifies the conclusion that he is a threat to anyone, and particularly to children or to any other nonconsenting potential victim of a sex crime.[4] He does not argue that, facially or as applied to him, there is no rational relation

---

[4]The plaintiff's 1989 conviction of committing unnatural acts (presumably in violation of G. L. c. 272, § 35) concerns a crime that is not included within the definition of "sex offense" in the act (G. L. c. 6, § 178C).

between the crime of indecent assault and battery and a registration requirement. Rather he asserts that he may be required to register only after he has had an opportunity for a hearing and, if a hearing is held, after a determination that he is a threat to the persons for whose protection the registration requirement has been imposed. This procedural due process issue, concerning the registration requirement of the sex offender act, was not addressed by the Justices in 1996, when they were asked certain questions about a bill concerning sex offender registration and notification that is different from the bill that was finally enacted. See *Opinion of the Justices*, 423 Mass. 1201, 1229 (1996).

3. *The constitutionally protected interest.* The plaintiff argues that both art. 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States require that the State accord him due process of law before it may subject him to registration pursuant to the act. The procedural due process principle on which the plaintiff relies requires that the government act in a fair manner when there is a deprivation of a constitutionally protected liberty or property interest. See *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976); *Aime* v. *Commonwealth*, 414 Mass. 667, 674 (1993); *E.B.* v. *Verniero*, 119 F.3d 1077, 1105, 1111 (3d Cir. 1997) (deprivation of liberty interest entitles level two and level three registrants to due process of law). The due process test requires a balancing of the individual interest at stake and the risk of an erroneous deprivation of liberty or property under the procedures that the State seeks to use against the governmental interest in achieving its goals. *Aime* v. *Commonwealth, supra* at 675. Deprivation of greater individual liberty interests requires greater procedures and stronger countervailing State interests. See *Mathews* v. *Eldridge, supra* at 334-335; *Opinion of the Justices, supra* at 1231. The first issue for us is whether the plaintiff has a constitutionally protected liberty or property interest.

We find instructive the opinion of the Supreme Court of New Jersey in *Doe* v. *Poritz*, 142 N.J. 1 (1995), in which the court considered various challenges to a group of acts known as Megan's Law. The court rejected most challenges to the law but held that the State and Federal Constitutions required that any decision to provide community notification must be "subject to judicial review before such notification is given." *Id.* at 12. The case did not concern the classification of a person as a tier one

(low) risk. *Id.* at 26-27. Under the New Jersey law, no information is available to the public concerning a person classified as a low or tier one risk. Only law enforcement agencies likely to encounter the registrant receive notification. N.J. Stat. Ann. § 2C:7-8c (West 1995).[5] For a tier two (moderate risk of reoffense) offender, community organizations, including schools, religious and youth organizations also receive notification. *Id.* For a tier three (high risk of reoffense) offender, members of the public likely to encounter the person registered also receive notification.

The New Jersey court concluded that under the State and Federal Constitutions (*Doe* v. *Poritz, supra* at 90-91) "a privacy interest is implicated when the government assembles those diverse pieces of information into a single package and disseminates that package to the public, thereby ensuring that a person cannot assume anonymity — in this case, preventing a person's criminal history from fading into obscurity and being wholly forgotten." *Id.* at 87. The court went on to conclude "that the state interest in public disclosure substantially outweighs plaintiff's interest in privacy" (*id.* at 88), noting "that the degree and scope of disclosure is carefully calibrated to the need for public disclosure: the risk of reoffense" (*id.* at 89).

The New Jersey court further concluded, however, that public notification implicates protected liberty interests in privacy and reputation that trigger procedural due process rights under both the State and Federal Constitutions. *Id.* at 100, 104, 106. "Thus, we conclude that classification in Tiers Two or Three, with the requisite public notification, would expose plaintiff to public opprobrium, not only identifying him as a sex offender but also labeling him as potentially currently dangerous, and thereby undermining his reputation and standing in the community." *Id.* at 103. "Our analysis [under the State Constitution] differs from that under the Federal Constitution only to the extent that we find a protectible interest in reputation without requiring any other tangible loss." *Id.* at 104. The New Jersey court additionally concluded that considerations of fundamental fairness, as well as principles of due process, require that tier two or three

---

[5]"Because only the prosecutor and local law enforcement would receive notification under Tier One, [the plaintiff] would be free, to the degree possible, to rehabilitate his name and standing in the community." *Doe* v. *Poritz*, 142 N.J. 1, 106 (1995).

offenders must be granted a pre-notification hearing. *Id.* at 106-108.[6]

The availability of information on request concerning a registered sex offender threatens the reputation of the offender and stigmatizes him as a currently dangerous sex offender. The sex offender act requires the plaintiff to take action that will register him as presenting a risk of committing a sex offense and creates the reasonable possibility that he will suffer adverse economic consequences from the disclosure of his new status in addition to the derision of people in the community. See *E.B.* v. *Verniero, supra* at 1089; *Doe* v. *Attorney Gen. (No. 2)*, 425 Mass. 217, 222 (1997). Cf. *Opinion of the Justices, supra* at 1226 (noting severe consequences that community notification may have). If public availability of information about the plaintiff serves no remedial purpose, that availability is unnecessary to provide protection for those whom the act was designed to protect. See *State* v. *Ward*, 123 Wash. 2d 488, 503 (1994) ("Absent evidence [that the offender poses a threat to the community], disclosure would serve no legitimate purpose. Therefore, we hold that a public agency must have some evidence of an offender's future dangerousness, likelihood of reoffense, or threat to the community, to justify disclosure to the public in a given case. This statutory limit ensures that disclosure occurs to prevent future harm, not to punish past offenses").

One does not have a constitutional right to privacy in information that is readily available. See *Russell* v. *Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997); *Doe* v. *Poritz*, 142 N.J. 1, 79 (1995). The plaintiff's criminal record is available to the public. The fact that most, if not all, the information that the plaintiff must disclose and that the act makes available to the public is avail-

___

[6]The New Jersey court did not identify the precise issues or the procedures that would be involved in a pre-notification hearing. In *E.B.* v. *Verniero*, 119 F.3d 1077 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit considered what process was due to a second or third tier offender in light of the determination by the New Jersey Supreme Court that such registrants had a right to procedural due process under the New Jersey Constitution and "a substantive right under that Constitution to be free of the disclosures required by Megan's Law, absent a demonstration that such disclosures are required by a legitimate and substantial state interest." *Id.* at 1105. The Court of Appeals held that at such a hearing the State had the burden of persuasion by clear and convincing evidence. *Id.* at 1106. The case before us does not present issues concerning the burden of proof.

able from other public sources does not dispose of the plaintiff's claim that his constitutionally protected privacy interests are violated. In certain instances, the aggregation and dissemination of publicly available information has triggered a right to privacy. See *United States Dep't of Defense* v. *Federal Labor Relations Auth.*, 510 U.S. 487, 500 (1994) ("An individual's interest in controlling the dissemination of information regarding personal matters [here a home address] does not dissolve simply because that information may be available to the public in some form"); *United States Dep't of Justice* v. *Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762-764 (1989); *Doe* v. *Poritz, supra* at 87 ("a privacy interest is implicated when the government assembles those diverse pieces of information into a single package and disseminates that package to the public"). The disclosure of a home address presents particular privacy concerns. See *United States Dep't of Defense* v. *Federal Labor Relations Auth., supra* at 501; *Doe* v. *Poritz, supra* at 82. But see *Hastings & Sons Publ. Co.* v. *City Treasurer of Lynn*, 374 Mass. 812, 813-814, 818 (1978) (public employees' payroll records containing home addresses). As we shall point out, in any event, not all the factors that lead us to conclude that the plaintiff has a constitutionally protected privacy interest involve information that is publicly accessible.

The plaintiff has sufficient liberty and privacy interests constitutionally protected by art. 12 that he is entitled to procedural due process before he may be required to register and before information may properly be publicly disclosed about him.[7] Under the Fourteenth Amendment a person's reputation is not a protected liberty or property interest unless the circumstances involve something more, such as a change in the person's rights or status protected by State law. *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 160 (1997), citing *Siegert* v. *Gilley*, 500

---

[7]In *Vaccaro* v. *Vaccaro*, 425 Mass. 153 (1997), we held that the availability of a person's domestic violence record to trial judges and to authorized law enforcement agencies who need such information to further the protective purposes of abuse-prevention statutes (*id.* at 159 n.6) did not violate art. 12. *Id.* at 162. We rejected the defendant's claim that he was deprived of a constitutionally protected liberty or property interest because of his subjective feelings about the presence of his name in the Statewide domestic violence record keeping system. *Id.* at 161. The circumstances of the plaintiff's case are quite different from those in the *Vaccaro* case.

As the *Vaccaro* opinion noted, State due process protection derives from provisions in addition to art. 12. *Id.* at 161 n.9.

U.S. 226, 233-234 (1991), and *Paul* v. *Davis*, 424 U.S. 693, 711 (1976). We need not decide, as the New Jersey Supreme Court did in *Doe* v. *Poritz*, *supra* at 104, that injury to reputation alone is a protected privacy interest under the due process provisions of the State Constitution. The combination of the following circumstances persuades us that the plaintiff has a liberty and privacy interest protected by the Constitution of the Commonwealth that entitles him to procedural due process: (1) the requirement that he register with local police; (2) the disclosure of accumulated personal information on request; (3) the possible harm to his earning capacity; (4) the harm to his reputation; and most important, (5) the statutory branding of him as a public danger, a sex offender. That statutory classification implicitly announces that, in the eyes of the State, the plaintiff presents a risk of committing a sex offense. We need not pass on the plaintiff's Federal procedural due process claim.[8]

4. *The process that is due.* As we have noted, the sex offender act fails to provide appropriate procedural due process to a person in the plaintiff's position. The act offers no procedure by which a level one offender may challenge the requirement that he register under the act.[9] The defendants argue that the legislative classification itself provides the plaintiff all the process that is due. There is, however, nothing inherent in the crime of indecent assault and battery, or in the circumstances (on the record before us) of the plaintiff, that indicates that

[8]We should not be understood, however, to say that a similar result would not obtain for similar reasons under the due process provisions of the Fourteenth Amendment to the United States Constitution. We have said that we treat the procedural due process protections of the Massachusetts and United States Constitutions identically. See *Liability Investigative Fund Effort, Inc.* v. *Massachusetts Medical Professional Ins. Ass'n*, 418 Mass. 436, 443, cert. denied, 513 U.S. 1058 (1994). But see *Aime* v. *Commonwealth*, 414 Mass. 667, 681 n.18 (1993) ("We have on occasion afforded the individual's interest in physical liberty more protection than required by the United States Supreme Court"). We have identified a State constitutional right that entitles a person in the position of the plaintiff to procedural due process under both Constitutions, without regard to whether such a person has an independent federally protected liberty or property interest. See *E.B.* v. *Verniero*, 119 F.3d 1077, 1105-1106 (3d Cir. 1997).

[9]In their 1996 opinion the Justices noted the considerable process accorded under proposed § 174B (see now G. L. c. 6, §§ 178K, 178M) to persons possibly to be classified as level two or level three offenders and thus potentially subject to community notification. *Opinion of the Justices*, 423 Mass. 1201, 1229-1230 (1996). The Justices were not asked about the due process rights of a person who would be classified as a level one offender.

either a person convicted of that crime, or the plaintiff himself, is a threat to those persons for whose protection the Legislature adopted the sex offender act. Nor is the State's interest in registration or notification so great that the risk of error in classifying the plaintiff as a sex offender must be tolerated.

The New York version of Megan's Law is similar to our sex offender act, but differs in that it is not as broadly retroactive as our act is, it does not apply to lesser crimes such as indecent assault and battery, and it does not require all sex offenders to register regardless of their circumstances. See N.Y. Correct. Law §§ 168-f (McKinney Supp. 1997).[10] The New York Sex Offender Registration Act places all registrants at least in a low (level one) designation. The law enforcement agency having jurisdiction over such an offender receives the offender's registration information. *Id.* at § 168-1 (6) (a). Also, pursuant to certain conditions, anyone may discover whether a particular person is listed as a low level risk in a central registry maintained by the State. *Id.* at § 168-p (1) and (2). In this respect the New York law is somewhat like G. L. c. 6, § 178I. The New York act is significantly different, however, from our law in an important respect. Each New York registrant required to register under the New York law can petition the original sentencing court to be relieved of the duty to register and thereby be freed from being the subject of further notification pursuant to the act. *Id.* at § 168-o. See *Doe* v. *Pataki*, 120 F.3d 1263, 1279 (2d Cir. 1997). The availability of this opportunity to seek relief from the registration requirement appears to provide an offender adequate procedural due process. The Massachusetts sex offender act permits a sex offender to apply to be relieved of the obligation to register, but the offender may not do so until at least fifteen years following conviction. G. L. c. 6, § 178G.

It may or may not be that the requirement that the plaintiff appear at a local police station, register as a sex offender, and answer certain questions impermissibly violates his liberty and privacy interests. See *Paul* v. *Davis*, 424 U.S. 693 (1976);

---

[10]See N.Y. Correct. Law § 168-a (2) (McKinney Supp. 1997) for a definition of "sex offense" and § 168-a (3) for a definition of "sexually violent offense." A sex offender who is released from a correctional facility or released on probation must register with the division of criminal justice services within ten days. See § 168-d (2) and § 168-f (1). The New York act does not require registration by persons who had served their sentences or paid their fines before the act was adopted.

*Opinion of the Justices*, 423 Mass. 1201, 1235 (1996). The public interest in having that information in the hands of local law enforcement officials may justify the registration requirement in the face of whatever liberty and privacy interests the registration requirement implicates. As to the public disclosure on request (G. L. c. 6, §§ 178I and 178J) of sex offender information, it is contrary to the principle of fundamental fairness that underlies the concept of due process of law to deny the plaintiff a hearing at which the evidence might show that he is not a threat to children and other vulnerable persons whom the act seeks to protect and that disclosure is not needed when balanced against the public need to which the sex offender act responded. Government action unreasonably stigmatizing the plaintiff would violate the plaintiff's constitutionally protected rights. The plaintiff is entitled to a hearing and a determination as to whether he must register under the act and, if so, whether sex offender information concerning him should be available on request.

5. *Conclusion.* A judgment shall be entered in the Superior Court declaring that the registration requirements and notification provisions of G. L. c. 6, §§ 178C-178O, are unconstitutional as applied to the plaintiff in the absence of a right to a hearing and, if a hearing is requested, to a determination concerning his threat, if any, to minors and others for whose protection the act was passed. An injunction shall be issued in the Superior Court enjoining the defendants from requiring the plaintiff to register under the sex offender act and from distributing or releasing any information concerning the plaintiff pursuant to that act, in the absence of a determination following a hearing concerning the plaintiff's threat, if any, to others.

FRIED, J. (concurring, with whom Abrams and Marshall, JJ., join). I join in the opinion of the court. The statute as applied to the plaintiff certainly has the defects identified in the court's opinion and they are sufficient to justify the relief we grant today. Because the statute goes beyond what the Justices indicated was constitutionally permissible in the Opinion of the Justices requested by the Senate in respect to a more carefully calibrated statute, see *Opinion of the Justices*, 423 Mass. 1201 (1996), and goes beyond the statutes enacted in New York and New Jersey and found constitutional by State and Federal courts,

see *Doe* v. *Pataki*, 120 F.3d 1263, 1265-1266 (2d Cir. 1997); *E.B.* v. *Verniero*, 119 F.3d 1077 (3d Cir. 1997); *Doe* v. *Poritz*, 142 N.J. 1, 15-17 (1995), I believe it important to restate some fundamental principles that apply to legislation of this sort.

## I

The plaintiff complains that the statute, as applied to him, violates both State and Federal procedural due process rights. He also claims that as applied to him the act violates State and Federal guarantees against the ex post facto imposition of punishment, double jeopardy and cruel and unusual punishment. In the *Opinion of the Justices*, the Justices considered, in a narrower context, these several rights, and noted that quite apart from the particular analyses each of them requires, they have a systematic relation among them which controls and organizes these particular analyses. See *Opinion of the Justices, supra* at 1218-1219. The many detailed protections for the criminal process set out in the Federal and State Constitutions necessarily presuppose that due process for the purposes of imposing criminal sanctions has a particular meaning distinct from what due process may mean in other contexts. That distinct body of rules may not be allowed to be elided into the general due process analysis of reasonableness as explicated in *Mathews* v. *Eldridge*, 424 U.S. 319 (1976). Marking off this distinct domain is the concept of punishment. See, e.g., *United States* v. *Ursery*, 518 U.S. 267 (1996); *Montana* v. *Kurth Ranch*, 511 U.S. 767, 777 (1994); *United States* v. *Ward*, 448 U.S. 242, 248 (1980). But punishment is not measured simply by the severity of the imposition — as there are minor criminal sanctions and major regulatory burdens — but by the kind of imposition. Condemnation and a judgment of guilt are the hallmarks of the criminal law. Punishment is visited on those who knowingly transgress norms and limits imposed by law. Regulation simply aims at procuring conformity with those limits, whatever the state of mind of the actor may be in respect to them. But to keep the concept of regulation in its place, it may be said that, while activities, professions, or relationships may be regulated, we do not have a general regime regulating adult competent persons as such. See *Opinion of the Justices, supra* at 1223. Persons are left to choose freely and if they make the wrong choices they are subject to retrospective condemnation and punishment. This is not merely a conceptual difference. It is a profound expres-

sion of our Constitution's conception of human nature and of the relation of individuals to the State. Although these generalities do not determine the answer to particular cases, they set the principles which guide the doctrines that do.

In working out these constitutional principles the law has been practical and flexible, but not to the point where the principles disappear or become meaningless. We have considered and allowed regulations of persons in two kinds of contexts. *First*, we have said that the prospective regulatory burden (as opposed to the criminal sanctions) may be imposed where it is ancillary, or preliminary, to the regular working of the criminal process and is exhausted when that process reaches its conclusion. That is how we have conceived the justification for preventative detention: as a kind of preliminary relief for the government where there is real and grave danger to the public prior to the conclusion of the criminal process, which still remains "the main event." See *Mendonza* v. *Commonwealth*, 423 Mass. 771, 781 (1996). *Second*, even where the criminal process has run its course (or may never even be invoked), additional or alternative, perhaps quite stringent, regulatory measures may be permissible where the danger is great and the measures are carefully calibrated to the needs of the particular case. Thus in *Kansas* v. *Hendricks*, 117 S. Ct. 2072 (1997), the Supreme Court upheld a Kansas statute providing for involuntary civil commitment of criminals after their scheduled release from serving their criminal punishment, so long as they were judicially determined to be dangerous sexual predators suffering from a "mental abnormality" and the State provided a variety of procedural safeguards both prior and subsequent to the judicial determination. *Id.* at 2077, 2086. This is the extreme case where a total deprivation of liberty, which began as punishment, continues as a regulatory measure. But the degree and specificity of the threat in that case was extreme also. The notification and registration provisions in this statute fall into the second category and, because they follow on and are closely associated with criminal condemnation, raise in an urgent way the constitutional imperative that the distinctiveness of punishment and the stringently limited regime surrounding its imposition not be elided under a loose and casual invocation of the concept of regulation.

Although the distinction between punishment and regulation is practical and not rigid there are a number of considerations

that bear on how that distinction must be made to preserve the integrity of fundamental constitutional principles. We have recognized in a number of contexts, see *Luk* v. *Commonwealth*, 421 Mass. 415, 427-428 (1995), and cases cited, that regulation may be imposed after a careful weighing of three factors: the kind and severity of the regulatory imposition, the kind and severity of the danger sought to be averted, and the aptness of the fit between the remedial measure and the danger to be averted. See *Opinion of the Justices, supra* at 1224-1225. I discuss each of these in turn as they bear on this statute.

II

The *Opinion of the Justices* contains a sufficient consideration of the burdens of some forms of community notification that they need not be rehearsed here. See *Opinion of the Justices, supra* at 1226. It should be noted, however, that this statute goes beyond the forms of notification to which the Justices were asked to respond, to provide for notification to any member of the public who inquires with the police, and, for the more serious levels of classification, very broad dissemination to community organizations and public posting of notices on cable television and in newspapers. See G. L. c. 6, §§ 178I, 178J, 178K (2) (*a*), 178K (2) (*c*); 803 Code Mass. Regs. § 1.03(5), (6) (1996). These are some of the several ways in which the present statute moves beyond a carefully calibrated approach to one of undifferentiated generality.

What is before us now, but was not before the Justices, is the registration requirement. Although community notification is a more novel regulatory measure and one with obviously harsh consequences, registration presents a different and importantly distinct kind of constitutional danger. Notification, after all, relates to the authorities' own dissemination of information properly within their possession. Cf. *Paul* v. *Davis*, 424 U.S. 693 (1976). There are independent values served in giving the public access to what the government knows, and notification may entail no more than reorganizing and collating that material in a form that makes it more accessible and more responsive to the public's desire to know it. Registration, on the other hand, forces an action on the person required to register. It is a continuing, intrusive, and humiliating regulation of the person himself. To require registration of persons not in connection with any particular activity asserts a relationship between

government and the individual that is in principle quite alien to our traditions, a relationship which when generalized has been the hallmark of totalitarian government. This is not to say that registration is always an unjustifiable infringement on liberty, but only that any justification for it must take into account its peculiar burdens in measuring them against the harm to be averted.

Next I come to the justifying danger. The *Opinion of the Justices* recounts the large amount of data offered, particularly by the United States as amicus curiae, to show the high rates of recidivism, especially by sex offenders who prey on children. That data figured prominently in the Justices's analysis, *Opinion of the Justices*, 423 Mass. at 1227-1228, as it has in the principal opinions upholding narrower statutes in other jurisdictions. See *Doe* v. *Pataki*, 120 F.3d 1263, 1265-1266 (2d Cir. 1997); *Doe* v. *Poritz*, 142 N.J. 1, 15-17 (1995). The Commonwealth presents no such data today, but instead relies simply on the legislative judgment in passing the statute in this form. Where government must show an interest of more than the usual degree of urgency to justify imposition on the individual, the simple invocation of its legislative judgment, buttressed perhaps by a showing of a rational basis for that judgment, will not do. Otherwise the constitutional restraints the State is asked to overcome would be rendered empty. In this case the urgency must be shown by the severity of the harm and the likelihood of its occurrence. There may be offenses (e.g., rape of a child) such that a general legislative category, without further particularization to the individual case, will be sufficient to make out the requisite justification. The omnibus, catch-all nature of some of the offenses included in this statute are at a far remove from such a showing. The plaintiff's offense in this case, for all we are told, portends no danger beyond embarrassment. And that is not enough. Although the touching here may well have been technically assaultive as not consented to, the circumstances make clear that it took place at a place and in a context where the plaintiff had every reason to believe that those he met were seeking just the kind of encounter he initiated. This is not to say that, if the government could show that one engaging in behavior that itself does not implicate the kind of danger that the statute seeks to guard against is also likely to engage in substantially more harmful conduct or direct his attention toward children, a predicate for registration and some form of notification might not be laid. We

have been offered nothing of that sort. That is the focus of the court's opinion and it is a judgment that I believe is entirely correct. Standing between the cases where statutorily defined harm itself may be shown to pose a sufficient danger in a categorical way, and those cases where only a particularized showing will do, may be cases where the statutorily defined predicate is sufficient to justify the regulation, but only if the subject of the regulation has the opportunity to show that he should be exempted from some or all of its strictures. The legislation in some States has such provisions. See, e.g., *Doe* v. *Poritz, supra* at 106-108; N.Y. Correct. Law § 168-o (McKinney Supp. 1997); Wash. Rev. Code § 9A.44.140(2) (1994).

The final element in the constitutional balance is aptness of fit. It is not enough that the regulation be directed at a serious harm; there must be an adequate showing as well that the particular regulatory measures are well-adapted to minimizing that danger. Registration and notification in respect to offenses especially likely to victimize vulnerable populations are thought to have a particular aptness as they allow those who care for such populations to take proper precautions for their protection, because ordinary prudence will not be enough. Of course some harms are so great that no special victim vulnerability need be shown. But once again, this case is as far as can be imagined from such an example.

### III

Registration and notification may be useful, and in any event are constitutionally permissible means for protecting the public, but only if they are narrowly tailored to a grave danger. Indiscriminate extensions such as appear in this case will only provoke continuous and often successful litigation. This will burden the courts and the relevant administrative agency to such a point that the purposes of the scheme will be delayed and perhaps defeated even in the carefully limited class of cases to which it properly applies.