Botsford, J.
The plaintiff John Doe is a sex offender subject to the Sex Offender Registration and Community Notification Act, G.L.c. 6, §§1780-1780 (theAct).[1] He was convicted in 1984 of rape of a child, indecent assault and battery of a child under fourteen and unnatural and lascivious acts. All of the crimes were committed against his minor daughter. The plaintiff received a sentence of 12 years. There is conflicting information provided as to when the plaintiff was ultimately released from prison, but it was no later than August 1995.
In 1996, pursuant to G.L.c. 6, §178E (§178E), the plaintiff registered with the police department in the town where he lives. Pursuant to G.L.c. 6, §§1781 and 178J (§§1781 and 178J),[2] the Sex Offender Registry Board (the Board) has made sex offender registration information about the plaintiff available to the public through police departments and through the Criminal History Systems Board.[3]
The board has classified the plaintiff as a high risk or Level Three offender pursuant to G.L.c. 6, §178K (§178K). However, community dissemination of sex offender information concerning Doe under §178K(2)(c) has been stayed pending a hearing in this case on the plaintiffs challenge to his classification. See G.L.c. 6, §178M (§178M). See also Poe v. Attorney General, C.A. No. 96-6327-B, 6 Mass. L. Rptr. 313 (Suffolk Superior Court, December 16, 1996).[4]
On November 17, 1997, the Supreme Judicial Court decided Doe v. Attorney General, 426 Mass. 136 (1997) (Doe No. 3). In response to that case, the plaintiff here seeks a preliminary injunction which would bar the Board from (a) requiring the plaintiff to continue registering under the Act, and (b) disseminating any sex offender registration information concerning the plaintiff.[5] The Board opposes the injunction. For the reasons summarized below, the plaintiffs request for injunctive relief is allowed in part and denied in part.
Discussion
I. Preliminary Injunction
In order to obtain a preliminary injunction, a moving party must “show that, without the requested relief, it may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits." Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990) (citation omitted). “What matters as to each parly is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits." Packaging Indus. Group v. Cheney, 380 Mass. 609, 617 (1980). In evaluating the motion, the court must “balance the risk of irreparable harm to the plaintiff and defendant ‘in light of [each] party’s chance of success on the merits’ at trial,” Planned Parenthood, 406 Mass. at 710 (quoting Packaging Indus.Group, 380 Mass. at 617). “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. (quoting Packaging Indus Group., 380 Mass. at 617).
II. The Merits
Given that the plaintiffs request for injunctive relief is based on the Supreme Judicial Court’s decision in Doe No. 3, it is useful to start with that case. Doe No. 3 concerned a challenge to certain provisions of the Act by a person convicted of a single count of indecent assault and battery[6] who was classified as a low level or Level One sex offender. The Doe No. 3 plaintiffs argument was that as a Level One offender, he could not constitutionally be required to register under the Act, and information concerning him could not constitutionally be provided to any person on request under §§1781 and 178J, unless and until a determination were made, after the plaintiff was given the opportunity for a hearing, that he was a threat to children or other vulnerable persons the Act was designed to protect. Doe No. 3, 426 Mass. at 139-40, 146. The court in Doe No. 3 agreed. It concluded that the plaintiff there had a constitutionally protected[7] liberty and property interest — arising in part from the potential harm to his earning capacity and reputation, and the stigma associated with being “branded” as a sex offender — which was implicated by the registration and basic information dissemination provisions of §§178E, 1781 and 178J of the Act. Id. at 142-44. And given the existence of this interest, the plaintiff was entitled, as a matter of due process, to the opportunity for a hearing
... at which the evidence might show that he is not a threat to children and other vulnerable persons whom the [A]ct seeks to protect and that disclosure is not needed when balanced against the public need to which the . . . [A]ct responded."
Id. at 146.
The question central to the request for injunctive relief of the plaintiff in this case is to what extent the court’s decision in Doe No. 3 applies to him. The plaintiff himself appears to take the position that there are no distinctions of substance between him (or indeed any sex offender) and the plaintiff in Doe No. 3, and that he (as well as every other sex offender) is entitled to exactly the same relief from the provisions of theAct as the plaintiff there. The Board, on the other hand, argues that there are several key factual differences between the two cases — e.g., the far more serious offense of rape of a child involved here, the substantial incarcerated sentence served by this plaintiff, the short amount of time that has passed since he was released from prison — which suffice to ensure that Doe No. 3 does not entitle the plaintiff in this case to any additional relief. According to the Board, the nature of the plaintiffs convictions and the Board’s determination that he should be classified as a Level Three sex offender, demonstrate that he should *149 remain subject to both the registration and public disclosure provisions of the Act.
I cannot agree fully with either argument. Contrary to the Board’s suggestion, it seems clear from Doe No. 3 that the liberty and privacy interest which the court identified as belonging to the plaintiff in that case also belong to all persons who qualify as “sex offenders” under the Act. See Doe No. 3, 426 Mass. at 144:
The combination of the following circumstances persuades us that the plaintiff has a liberty and privacy interest protected by the Constitution of the Commonwealth that entitles him to procedural due process: (1) the requirement that he register with local police; (2) the disclosure of accumulated personal information on request; (3) the possible harm to his earning capacity; (4) the harm to his reputation; and most important, (5) the statutoiy branding of him as a public danger, a sex offender. That statutoiy classification implicitly announces that, in the eyes of the State, the plaintiff presents a risk of committing a sex offense.
This same “combination of... circumstances” applies with equal force to the plaintiff in this case and indeed to every sex offender required by the Act to register. The factual differences between the plaintiff here and the plaintiff in Doe No. 3 in my view give the Commonwealth a more substantial interest in this case in requiring the plaintiff to register as a sex offender and enabling sex offender information about him to be made available to the public. But as the court’s analysis in Doe No. 3 indicates, the threshold issue is to identify the nature of the plaintiffs interest alone, without factoring in the Board’s (or more generally, the Commonwealth’s). See id., 426 Mass. at 140-44. There is nothing in Doe No. 3 which suggests that the extent of a sex offender’s liberty and privacy interests implicated by the requirements of the Act turns on the nature of the sex offense which he committed or the particular facts of his case.
On the other hand, the plaintiff appears to ignore the court’s repeated focus in Doe No. 3 on the specific factual circumstances which the plaintiff there presented. See, e.g., 426 Mass. at 137-39, 144-45. As just suggested, the differences in factual circumstances presented by the plaintiff in this case and the plaintiff in Doe No. 3 arguably change the strength or “urgency” (the word of Justice Fried) of the Commonwealth’s interest in seeing that the registration and public disclosure provisions of the Act continue to be enforced in relation to the plaintiff here.
In sum, what Doe No. 3 indicates in relation to this case is that (1) like the plaintiff in Doe, the plaintiff here ”... has sufficient liberty and privacy interests constitutionally protected by art. 12 that he is entitled to procedural due process before he may be required to register and before information may properly be publicly disclosed about him[,]” Doe No. 3, 426 Mass. at 143; but (2) what must be determined by a specific examination of the facts presented here is the scope of the process which is due.
The level of process due in a particular situation requires balancing three factors:
First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews v. Eldridge, 424 U.S. 319, 335 (1976).[8] As the court noted in Doe No. 3, “[deprivation of greater individual liberty interests requires greater procedures and stronger countervailing State interests.” 426 Mass. at 140. The balancing process is.discussed below. For the reasons discussed there, the result of the balancing process in this case depends on whether the focus is the public disclosure provisions set out in §§1781 and 178J, or the registration requirement set out in §§178E and 178F.
1. Public Disclosure,
a. The private interest.
In the present case, the first of the Mathews factors, the nature of the private interest affected, is the one just discussed, namely, the plaintiffs liberty and property interest in avoiding being identified and “branded” as a “public danger, a sex offender,”[9] with all the accompanying potential for harm to earning capacity, reputation and the ability to shield personal information from entering the public domain.
b. The risk of erroneous deprivation.
It is in relation to the second Mathews factor, the risk of erroneous deprivation of the plaintiffs liberty and privacy interest if the Board permits public disclosure of sex offender information without a hearing, that this case differs from Doe No. 3. In Doe No. 3, the plaintiffs offense — the unlawful touching of an undercover police officer in a location known to be frequented by men seeking sexual encounters — was relatively minor; as the concurring opinion noted, the offense “portends no danger beyond embarrassment,” Doe No. 3, 426 Mass. at 150 (Fried, J., concurring). See also id. at 144-45:
There is, however, nothing inherent in the crime of indecent assault and battery, or in the circumstances ... of the plaintiff, that indicates that either a person convicted of that crime, or the plaintiff himself, is a threat to those persons for whose protection the Legislature adopted the sex offender act.
In such circumstances, the risk of error in the absence of an individual hearing could be substantial.[10]
*150 The situation in the present case is distinct in important respects. The plaintiff was convicted of a crime against child, one of the classes of persons the Act specifically seeks to protect. The offense he committed, rape, is serious, one which may be thought to include an inherent threat of harm through reoffense. Moreover, the plaintiff only completed his sentence in 1995, and thus has had relatively little time at liberty in the community to demonstrate a propensity not to reoffend.[11] Arguably, the risk is much lower than in Doe No. 3 that public disclosure on request of sex offender information prior to a hearing is likely to deprive the plaintiff erroneously of constitutionally protected liberty and property interests.
Nevertheless, despite the differences in the two cases, I conclude the plaintiff is likely to prevail on his claim that even the less substantial risk of an erroneous deprivation of the plaintiffs liberty and privacy interests is still sufficient to require that those interests be protected by a predeprivation hearing. The risk of error stems from the nature of the issue at hand, viz., the proper identification of sex offenders who pose a threat to minors and other vulnerable persons of committing another sexual offense. See E.B. v. Verniero, 119 F.3d 1077, 1108-09 (3d Cir. 1997).
In Verniero, the Third Circuit Court of Appeals reviewed the public notification provisions of Megan’s Law, New Jersey’s sex offender registration and community notification statute, that apply to sex offenders classified as Tier 2 and Tier 3 offenders, that is, offenders presenting respectively moderate or high risks of reoffense. Under the New Jersey statute, prosecutors apply guidelines concerned with issues similar to those in §178K to determine each offender’s risk of reoffense. Id. at 1083 (statute directs guidelines to include such considerations as conditions of release; physical condition of offender; offender’s response to treatment; etc.). The New Jersey statute (as modified by the New Jersey Supreme Court in Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995)) affords each offender classified as fitting in Tier 2 or Tier 3 the right to a judicial hearing before the disclosure of his sex offender information to anyone not a law enforcement official. In considering the due process concerns of offenders so classified, the court in Verniero determined that even with the safeguard of a hearing, the risk of an erroneous disclosure of offender information was substantial. Accordingly, the court ruled that the Due Process Clause required the government to prove the appropriateness of its tier classification (and thus the relative risk of reoffense), rather than having the offender prove the classification’s invalidity; and that the government do so by clear and convincing evidence. Id. at 1106-11. The court based this conclusion on a number of factors, including (1) the limited ability of mental health professionals or others to predict future violence or dangerousness accurately (the court referred to two empirical studies highlighting these limits), id. at 1108; (2) the difficult factual questions relevant to a determination about an offender’s risk of reoffense — these questions might require inquiry into the circumstances of the offense that triggered the statute’s registration requirements, some of which might not have been resolved at the criminal proceeding; (3) the circumstances of other criminal conduct by the offender, including, in some cases, conduct for which the offender was not convicted, id.; and (4) the difficulty, generally, of resolving factual issues related to sexual offenses, usually committed in private and witnessed only by the victim and the offender, id.
These same risk factors for an erroneous determination of an offender’s threat of reoffending apply to the plaintiff in this case, classified as a Level Three offender, as well as every sex offender subject to the Act. Arguably, their impact is greater here than was the case in Verniero since in contrast to New Jersey’s Megan’s Law, the Act contains no opportunity for any hearing before sex offender information relating to a registered offender is made available for disclosure on request under §§1781 and 178J.[12] See Cutshall v. Sundquist, F.Supp. (M.D. Tenn. 1997), 1997 WL 641421, *6-7 (registered sex offender has right to be heard on issue whether public disclosure of sex offender information is necessary to protect the public before disclosure occurs; Tennessee statute not providing for such a hearing unconstitutionally deprived offender of procedural due process).[13]
It is true that as a sex offender classified as Level Three, the plaintiff is entitled to a judicial hearing to challenge his classification under §178M, and it might be claimed that this provides sufficient due process. There are two difficulties with the argument. First, the statutory opportunity for a hearing necessarily follows the plaintiffs registration as a sex offender and completion of the Board’s classification process, which takes quite some time. Indeed, with respect to the plaintiff in this case and all other sex offenders who have sought hearings under §178M to date, the hearings have yet to be scheduled because of unresolved legal issues about the type of hearing which is to be held. (See p. 3 n.5 above.) Accordingly, for the plaintiff (as well as others), more than a year has passed since he was first required to register as a sex offender with no hearing made available. During that period, sex offender information about the plaintiff has been made available to members of the public on request under §§1781 and 178J, and as aresult, the plaintiff has been presented as a person whom the government deemed a threat to children and others. This opportunity to be heard is not likely to be sufficiently timely to qualify as meaningful. The second problem is that the hearing contemplated by G.L.c. 6, §178M is on the question of whether a particular sex offender has been properly classified by the Board as a Level Two or Level Three offender, rather than a Level One offender; there is no basis in §178M itself to suggest that a person may use the hearing to challenge the fundamental statutory premise that as a “sex offender” under the Act, he must *151 register and that sex offender information pertaining to him will automatically be made available on request to inquiring adult members of the public. Thus, §178M as reasonably construed probably does not afford the plaintiff with the opportunity for a hearing on the issues he raises here.
The argument may also be raised that in certain cases at least, the Legislature’s decisions about how to classify certain offenders constitutes sufficient process for constitutional purposes.[14] In particular, the claim might be that the Legislature could have considered the empirical studies pertinent to risk of reoffense and could have determined that the commission of certain types of crimes, including rape of a child, the offense involved in this case, indicates that a person convicted of such crimes necessarily presents a risk of reoffense. This legislative decision-making, according to this argument, is all of the process that is and should be due to such an offender, including the plaintiff here.
I disagree. At issue in this case is a person who was convicted of sexual offenses in 1984, over thirteen years ago. He has served his sentence. As discussed above, he has a constitutionally protected interest in not having personal information about himself and his past offenses made available to the public upon request and in not being stigmatized as a sex offender whom the government has determined presents a threat to minors and other vulnerable persons. The harm which potentially may be visited upon him if such information and label are erroneously made available to the public is great. (See pp. 17-18 below.) In the circumstances, more than a legislative generalization is required to justify depriving him of the liberty and property interests he has at issue here.[15] The plaintiff is entitled to the opportunity for a hearing where he would have the chance to show that despite the nature of his offenses, he does not present a risk of reoffense. As stated in Mathews v. Eldridge, supra:
[S]ome form of hearing is required before an individual is finally deprived of a property interest.[16] . . . The right to be heard before being condemned to suffer grievous loss of any kind ... is a principle basic to our society . . . The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.
424 U.S. at 333 (citations and internal quotation marks omitted). See, e.g., In the matter of Kenney, 399 Mass. 431, 435 (1987) (“the fundamental requisite of due process is an opportunity to be heard at a meaningful time in a meaningful manner”).
c. The government’s interest.
The third factor to be balanced is the Commonwealth’s interest in ensuring that the proposed governmental action — here, making available to the relevant public sex offender information for protective purposes — occurs, and the possible burden on the Commonwealth of affording the plaintiff procedural safeguards before taking that action. Concededly, the requirement that the plaintiff be afforded the opportunity for hearing before any public access is permitted imposes significant fiscal and administrative burdens on the Board, or more generally the Commonwealth. On the other hand, the Commonwealth also has an interest in ensuring that the determination of who presents a risk of reoffense is an accurate one. See E.B. v. Verniero, supra, 119 F.3d at 1109, 1110. The obligation to afford a hearing will certainly slow down the Board’s ability to carry out fully the protective purposes of the Act, but in the end will not prevent the realization of these goals. Because I conclude below that the plaintiff will still be required to register with the appropriate police departments and comply fully with the provisions of §§178E and 178F, law enforcement officials may continue to monitor him. See Verniero, supra, 119 F.2d at 1110. Given this fact, the Commonwealth’s interest in notification alone is not so great that “the risk of error in classifying the plaintiff must be tolerated.” Doe No. 3, 426 Mass. at 145.
2. Registration
The Act’s requirement that the plaintiff register, see §§178E, 178F, yields a different result than the public-disclosure-on-request provisions of §§1781 and 178J, insofar as the due process balancing test is concerned.
First, the plaintiffs interest in not being obliged to register is far less compelling than his interest pertaining to the disclosure provisions. Registration involves the appearance at a police station and the provision of required categories of information; it further requires annual verification of that information with the police, and notification to and registration with the relevant local police departments when a sex offender moves to a different city or town. The information thus provided by the sex offender is transmitted to the Board and may be available to other law enforcement agencies, but is not disclosed to the public. See §§178E and 178F. Doe No. 3 did conclude that the plaintiff there had a constitutionally recognized privacy and liberty interest which was implicated by the obligation to register. 426 Mass. at 143-44. But most of the circumstances leading the court to that result related far more closely to the consequences of registration, viz., the resulting availability of sex offender registry information to the public on request. See id. at 144 (listing five “circumstances"; of these, first concerns registration, other four appear to concern potential consequences of public disclosure of sex offender registry information). Indeed, the court specifically declined to determine whether the bare requirement of registration, on its own, would violate a constitutionally protected interest:
It may or may not be that the requirement that the plaintiff appear at a local police station, register as *152 a sex offender, and answer certain questions impermissibly violates his liberty and privacy interests
Doe No. 3, 426 Mass. at 145 (citations omitted).
Assuming the plaintiff would be able to show he has a limited liberty or privacy interest that is violated by the registration requirement, but see Vaccaro v. Vaccaro, 425 Mass. 153, 161-62 (1997), I believe that interest would be outweighed by the State’s strong concern for the protection of minors and other vulnerable categories of persons from future harm: the purpose of the Act. Even in connection with the plaintiff in Doe No. 3, the court surmised that the public interest in disclosure at least to law enforcement personnel might outweigh the private interest in avoiding it. See Doe No. 3, 426 Mass. at 146 (“the public interest in having [sex offender) information in the hands of local law enforcement officials may justify the registration requirement in the face of whatever liberty and privacy interests the registration requirement implicates”). Here, the offense of which the plaintiff was convicted, rape of a child, may well constitute one of the core offenses in terms of the Act’s protective goals. See Doe No. 3, 426 Mass. at 150 (Fried, J., concurring) (“there may be offenses (e.g., rape of a child) such that a general legislative category, without further particularization to the individual case, will be sufficient to make out the requisite justification [for registration]”). In light of the relatively confined scope of potential injury the plaintiff faces from registration, the scale tips in favor of requiring the plaintiff to comply with the registration requirements of the Act before being given the opportunity for a hearing.
III. Irreparable Harm and Balance of Relative Harms.
In Doe No. 3, the court enjoined the Board from, inter alia, permitting the release of sex offender registry information about the plaintiff in that case prior to providing an opportunity for a hearing to assess whether he presented a risk of reoffense. Implicit in the decision is a determination that the potential harm to the plaintiff resulting from public disclosure of his status as a sex offender outweighed the Commonwealth’s interest in protecting certain vulnerable persons from the threat of reoffense. The plaintiff here faces the same types of potential harm from the public access to sex offender information about him as the plaintiff in Doe No. 3 did. As the Supreme Judicial Court has noted in another sex offender case:
The potential harm to the plaintiff in his employment or in his community, or both, from the use of . . . [sex offender registry] information for other than personal protection is substantial. Once the plaintiff is harmed, at best it will not easily be remediable.
Doe v. Attorney General (No. 2), 425 Mass. 217, 222 (1997). See A.B. v. Attorney General, No. 97-J-755 (Massachusetts Appeals Court, Memorandum Stating Reasons for Order Issued October 31, 1997 [dated November 4, 1997], slip op. atpp. 2-3, 6-7).[17]
In the circumstances the plaintiff has met his burden of showing a likelihood of irreparable harm insofar as the disclosure provisions of §§1781 and 178J are concerned. He has also shown that when that likelihood of harm is weighed in light of the merits showing he has made and then balanced against the risk of harm to the Board if an injunction against disclosure is granted, the balance tips in the plaintiffs favor.
With respect to the registration requirement, I cannot agree that irreparable harm will flow from the plaintiffs obligation to continue to register or that the balance of harm is in the plaintiffs favor. There is no need to repeat in detail the discussion above; in summary, the plaintiffs liberty and privacy interests are more narrowly affected by registration than by disclosure, while the government has a highly significant if not urgent interest in requiring the plaintiffs registration to be maintained before the opportunity for a hearing can be provided, given the nature and circumstances of the plaintiffs sex offense.
ORDER
For the foregoing reasons, it is ordered as follows:
1. The defendant Sex Offender Registry Board is preliminarily enjoined, until further order of the Court, from distributing or releasing any sex offender registry information concerning the plaintiff pursuant to G.L.c. 6, §§1781 and 178J, in the absence of a determination, following a hearing at which the plaintiff is entitled to present evidence and be heard, concerning the plaintiffs threat, if any, to others on account of a risk of reoffense; and
2. The Board is further ordered to contact any and all police departments and every person or entity to whom the Board has disseminated sex offender registry information concerning the plaintiff and to instruct those persons and entities that a court order in this case has stayed the dissemination of any such information pursuant to G.L.c. 6, §§1781 and 178J until further order of this court.
The plaintiffs motion for a preliminary injunction is otherwise denied.

The term “sex offender" is defined in c. 6, §178C as a person who has been convicted of a “sex offense” or “adjudicated as a youthful offender or as a delinquent juvenile by reason of a 'sex offense’ ” since August 1, 1981, or a person who has been released from incarceration, probation or parole since that date for such a conviction or adjudication. Approximately eleven different offenses are included within the definition of “sex offense” appearing in §178C. These include: indecent assault and battery of persons over and under fourteen, rape, rape of a child, assault with intent to commit rape, kidnapping of a child under sixteen, open and gross lewdness and lascivious behavior, unnatural and lascivious acts with a child under sixteen, and attempts to commit any of these crimes. §178C.

Section 1781 provides that any person who is eighteen or older may receive from the Board, at no cost, a report indicating whether a particular person identified by name or other *153 sufficient identifying characteristics is a sex offender, the sex offense or offenses of which he stands convicted or adjudicated (if a juvenile), and the date(s) of the convictions or adjudications.
Section 178J provides that any person who is eighteen or older may appear in person at a police station with proper identification, state that he or she requests the sex offender registry information for his own protection or the protection of a child or some other person for whom the inquirer has responsibiliiy, and complete an inquiry record form. The inquirer is permitted to identify a specific individual (by name or other identifying information) as the subject of the sex offender inquiry; or inquire whether any sex offenders live or work within a one mile radius of a specific address; or inquire whether any sex offenders live or work on a specific street. If the search of the sex offender registry results in the identification of one or more sex offenders, the police are to provide the person making the inquiry with the following information with respect to each: name of offender; home address; work address; offense for which he was convicted or adjudicated, and dates of such conviction or adjudication; age, sex, race, height, weight, eye and hair color; and photograph, if available.

It appears that the board has disseminated information concerning the plaintiff pursuant to § 178 J thirteen times. The board indicates it does not keep records of the number of requests for information made under §1781.

The hearing under § 178M has itself been stayed to permit judicial review of at least two decisions rendered in other sex offender cases concerning the scope, nature and timing of such hearings.

Although the plaintiff’s request for injunctive relief asks for a complete ban on enforcement of the registration and the basic (Level One) disclosure or notification provisions of the Act in relation to himself, presumably he seeks this type of relief only until he is afforded a hearing before the board at which he would have the opportunity to show that he poses no threat or risk of reoffense to children and other vulnerable persons. This is the relief granted in Doe No. 3. See id., 426 Mass. at 137, 146.

The underlying facts were that the plaintiff in Doe No. 3 had approached an undercover police officer in a highway rest area reputedly popular for consensual sexual activity between adult males, and had touched or rubbed the officer’s groin through the officer’s pants. The officer had then identified himself and arrested the plaintiff. The plaintiff in Doe No. 3 had also been convicted in 1989 on a single count of unnatural acts relating to consensual sexual activity near a highway rest area. This earlier offense is not a “sex offense” as defined in the Act.

The constitutional protection derives from art. 12 of the Massachusetts Declaration of Rights.

This is substantively the same balancing test employed by the Supreme Judicial Court. See Doe No. 3, 426 Mass. at 140 ('The due process test requires a balancing of the individual interest at stake and the risk of an erroneous deprivation of liberty or property under the procedures that the State seeks to use against the governmental interest in achieving its goals”). See also Opinion of the Justices, 423 Mass. 1201, 1231 (1996); Aime v. Commonwealth, 414 Mass. 667, 673 (1993).

Doe No. 3, 426 Mass. at 144.

The risk of error, of course, is the risk that sex offender information concerning a particular individual — here the plaintiff — will be made publicly available on request even though that person does not in fact present a risk or threat of harm to children or other persons vulnerable to becoming victims of sex offenses.

Howmuch time the plaintiff has spent in the community is not clear, but it may only have been on a continuous basis since 1995. (See pp. 1-2 above.)

The court in Doe No. 3 discussed, and contrasted with the Act, both New Jersey’s Megan’s Law and the New York sex offender registration and notification law. See Doe No. 3, 426 Mass. at 140-42 (New Jersey), 145 and n.10 (New York). The New Jersey statute is discussed in the text above. The New York statute gives a sex offender the opportunity to petition the original sentencing court to be relieved of the registration requirement and thereby of the notification provisions of the statute as well; in addition, the offender may be heard at the judicial proceeding at which his risk level is determined. See Doe v. Pataki, 120 F.2d 1263, 1267-69, 1270 (2d Cir. 1997). Where coruts have not required the sex offender to be afforded the chance for a hearing before community notification of any kind occurs, they have first determined that the notification provisions of the statutes in question did not implicate any constitutionally protected privacy or liberty rights. See, e.g., Russell v. Gregoire, 124 F.3d 1079, 1093-94 (9th Cir. 1997); Doe v. Kelley, 961 F.Supp. 1105, 1112 (W.D.Mich. 1997). Clearly these cases are inapposite here, given Doe No. 3’s conclusion that a sex offender does have privacy and liberty interests that deserve due process protection.

The Board asserts that empirical studies abound demonstrating the high risk of reoffense that sex offenders present, and discusses in particular studies tending to show that incest offenders like the plaintiff frequently go on to commit sex offenses outside the family. The plaintiff, however, cites to other studies tending to show that of sex offenders, incest offenders are relatively unlikely to reoffend. Without guidance provided by a hearing at which evidence on these issues might be submitted, I am not able to determine which of these studies is more persuasive, and certainly I cannot consider the application of their conclusions to the plaintiff. The conflicting research and studies, in my view, highlight the potential for error in making a determination as to risk of reoffense without any sort of hearing. More generally, the existence of studies supporting the view that recidivism rates among sex offenders or certain types of sex offenders are particularly high may provide support for the position that the Act does not violate constitutional proscriptions against ex post facto laws or perhaps the plaintiffs right to substantive due process. See Opinion of the Justices, supra, 423 Mass. at 1227-28. The value of the studies to establish that the plaintiff in this case has been afforded all the process that is due seems more questionable.

The Board does not make this argument in the present case; the Attorney General, however, has made it in another case involving similar issues, and currently under advisement before me. See State Defendants’ Opposition to Motion for Preliminary Injunction at 12-13 in Jack Doe v. Attorney General Civil No. 97-4980 (Middlesex Super. Ct.).

Furthermore, as discussed briefly above (see p. 12, n.14), the plethora of studies on all sides of the recidivism and dangerousness issue may serve more to cloud than to clarify the knotty problem of determining a future risk of dangerousness in relation to a particular person.

This analysis applies equally to liberty and privacy interests of the sort involved in this case.

The Board argues that the plaintiff cannot claim to face irreparable harm from disclosure of his sex offender registry information since he has been registered for over one year and yet brings forward no allegations of actual harm having been visited upon to him as a result. I am ultimately not persuaded. As the single justice of the Appeals Court reasoned in A.B. v. Attorney General No. 97-J-755 (Memorandum Stating Reasons for Order Issued October 31, 1997 [dated November 4, 1997], slip op. at p.4): “One would not counsel continuing to live in an unsafe building because it *154 has been unsafe for two months and has not yet collapsed.” That the plaintiff has not yet been subjected to harm or loss as a result of the public availability of information about his status as a sex offender does not mean the future will be equally problem-free in this regard. The harm suffered by other offenders concerning whom sex offender information has been disclosed is sufficiently documented that I consider the plaintiffs concerns to be more than speculative. See, e.g., E.B. v. Verniero, 119 F.3d 1077, 1088-90, 1102 (3d Cir. 1997).