JOHN DOE vs. ATTORNEY GENERAL & others.[1]

Norfolk. May 7, 1999. - August 11, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Delinquent Child. Sex Offender. Constitutional Law,* Sex offender, Privacy. *Due Process of Law,* Sex offender, Hearing. *Privacy. Statute,* Construction.

Review of this court's recent decisions addressing challenges to the Sex Offender Registration and Community Notification Act, G. L. c. 6, §§ 178C-178O. [160-163]

This court concluded that persons adjudicated delinquent or convicted under G. L. c. 265, § 23 (rape of a child), are entitled to an individualized hearing to determine whether they are required to register as a sex offender, absent sufficiently particularized regulations promulgated by the sex offender registry board, and the burden is on the board to demonstrate that certain conduct justifies registration in each case. [158-159, 163-166, 168]

The operation of the statutes governing adjudications of juvenile delinquency do not create an enforceable term of confidentiality with respect to any delinquency plea agreement and there is no other statutory right to the confidentiality of a juvenile adjudication. [166-168]

CIVIL ACTION commenced in the Superior Court Department on November 25, 1996.

A motion for a preliminary injunction was heard by *Judith A. Cowin,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James M. Doyle* for the plaintiff.

*Gregory S. Gilman,* Assistant Attorney General, for the Attorney General & others.

*Carol A. Donovan,* Committee for Public Counsel Services, & *John Reinstein,* for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

[1]Criminal History Systems Board, Department of Youth Services, the district attorney for the Norfolk district, the chief of police of the town where John Doe resides, and the clerk of the Wrentham Division of the District Court Department.

MARSHALL, J. We consider once again a challenge to the registration and notification requirements of the Sex Offender Registration and Community Notification Act, G. L. c. 6, §§ 178C-178O (act or sex offender act).[2] In 1993, the plaintiff, John Doe, then fifteen years old, entered into a negotiated plea agreement with the Commonwealth pursuant to which he was adjudicated delinquent by reason of the rape of a child, G. L. c. 265, § 23. Doe admitted that he had twice forced a four year old girl to perform oral sex on him. He agreed to enter the plea in reliance on statutory provisions holding juvenile adjudications confidential.[3] He was placed on probation, and has completed his probation and the required counseling. Doe has not been accused of committing any other offenses either prior to or since this delinquency adjudication.

Approximately three years after his delinquency adjudication, Doe was served with notice that an application for a complaint had been filed in the Wrentham Division of the District Court Department, seeking to commence prosecution against him for failing to register as a sex offender.[4] Doe thereupon commenced this action in the Superior Court seeking declaratory and injunctive relief. He claimed that the act is unconstitutional under the

[2]We acknowledge the amicus brief filed jointly by the Committee for Public Counsel Services and the American Civil Liberties Union of Massachusetts.

[3]For example, at the time of Doe's adjudication of delinquency, G. L. c. 119, § 60A, as amended through St. 1985, c. 425, stated:

"The records of the court, including those of a juvenile appeals session, in all cases of delinquency arising under sections fifty-two to fifty-nine, inclusive, shall be withheld from public inspection except with the consent of a justice of such court, but such records in any such case against any particular child shall be open, at all reasonable times, to the inspection of the child, his or her parent or parents, guardian and attorney, or any of them.

"Notwithstanding the provisions of this section, the name of a child shall be made available to the public by the probation officer without such consent if the child is: alleged to have committed an offense while between his fourteenth and seventeenth birthdays; and has previously been adjudicated delinquent on at least two occasions for acts which would have been punishable by imprisonment in the state prison if such child had been age seventeen or older; and is charged with delinquency by reason of an act which would be punishable by imprisonment in the state prison if such child were age seventeen or older."

[4]Section 178H provides that a "sex offender who knowingly fails to register . . . shall, upon a first conviction, be punished by imprisonment for not more

Federal and Massachusetts Constitutions on its face and as applied to him[5] and that confidentiality provisions governing juvenile adjudications prohibit the defendants (collectively, the Commonwealth) from requiring him to register and from disseminating any sex offender registry information about him.

The Commonwealth agreed to defer enforcement against Doe pending a ruling on his motion for a preliminary injunction. A judge in the Superior Court denied Doe's motion, but issued a temporary stay pending appeal. Doe filed a petition, pursuant to G. L. c. 231, § 118, for review of that decision by a single justice of the Appeals Court. A single justice continued the stay preventing registration and dissemination of Doe's registration information until further order of the Appeals Court and ordered Doe to file his notice of appeal within two weeks. Doe thereafter took an appeal from the denial of his motion for a preliminary injunction. We transferred the case here on our own motion.

In response to our decision in *Doe* v. *Attorney Gen.*, 426 Mass. 136 (1997) (*Doe [No. 3]*), the Commonwealth filed a motion to remand the case to the Superior Court to allow it to submit additional evidence.[6] The Commonwealth sought to introduce evidence demonstrating that the Legislature's decision to subject every person adjudicated delinquent or convicted under G. L. c. 265, § 23, to the provisions of the act was justified, and that no individualized hearing is required in such cases. The motion was allowed by a single justice of this court. The parties thereafter filed in this court a joint supplemental appendix containing additional evidence introduced in the Superior Court.[7]

We conclude that an individualized hearing is required, as a

than two and one-half years in a house of correction or by a fine of not more than one thousand dollars, or by both a fine and imprisonment."

[5]Doe claimed that the act is not a proper exercise of the police power under the Massachusetts Constitution, denies him equal protection of the laws and due process of law, subjects him to ex post facto and cruel and unusual punishment, and deprives him of his right to travel, his right to privacy, and his statutorily created right to confidentiality in juvenile adjudications.

[6]Since the denial of Doe's motion for a preliminary injunction, we have addressed various provisions of the act, discussed *infra*. See *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90 (1998) (*Doe [No. 4]*); *Doe* v. *Attorney Gen.*, 426 Mass. 136 (1997) (*Doe [No. 3]*); *Doe* v. *Attorney Gen. (No. 2)*, 425 Mass. 217 (1997) (*Doe [No. 2]*); *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210 (1997) (*Doe [No. 1]*).

[7]The judge made no further ruling on Doe's motion for a preliminary injunction after taking this evidence.

condition of registration as a sex offender, for persons adjudicated delinquent or convicted under G. L. c. 265, § 23, absent the promulgation of carefully tailored regulations we discuss more fully below. We remand the case to the Superior Court for further proceedings consistent with this opinion. We do not reach the question whether the act imposes constitutionally impermissible punishment on the plaintiff. *Id.* at 137.[8]

1. *Background.* Because of the nature of Doe's delinquency adjudication in 1993, § 178E (*h*) of the act requires him to register as a sex offender. Registration will continue for a minimum of fifteen years beyond the date of his adjudication as a sex offender. G. L. c. 6, § 178G. Once a sex offender registers with the criminal history systems board (board), the sex offender registry board (sex offender board) must classify him as a level one, two, or three offender, based on the risk that he will reoffend. G. L. c. 6, § 178K.[9] Doe has not registered, and therefore has not been classified. If Doe registered prior to classification, he would nevertheless be subject to the public dissemination provisions of G. L. c. 6, §§ 178I and 178J.[10]

The act requires that the board transmit registry information on all offenders to the "police departments where the sex offender intends to live and work and where the offense was committed and to the Federal Bureau of Investigation." G. L. c. 6, § 178K (2) (*c*). Section 178I allows any person over the age of eighteen to receive registry information about a specific

---

[8]We previously have indicated that "furnishing sex offender information, except in circumstances that serve the act's remedial purposes, might constitute constitutionally impermissible punishment as to a person convicted of a sex crime committed before the act's effective date." *Doe (No. 3), supra* at 137 n.3, citing *Doe (No. 2), supra* at 221-222, and *Opinion of the Justices,* 423 Mass. 1220, 1223-1224 (1996).

[9]The sex offender board is a subdivision of the board which

"shall promulgate guidelines for determining the level of risk of reoffense of sex offenders, apply the guidelines to assess the risk level of particular offenders, develop guidelines for use by city and town police departments in disseminating sex offender registry information, and make recommendations to the superior court regarding risk levels and community notification plans in the cases where the offender has a right to judicial review and has requested a hearing as provided in section 178M."

G. L. c. 6, 178K (1).

[10]See notes 11 and 12, *infra.*

individual.[11] Section 178J allows a person over the age of eighteen years, for his or her "own protection or for the protection of a child under the age of eighteen or another person for whom [he or she] has responsibility, care or custody," to inquire "whether any sex offenders live or work within a one mile radius of a specific address," or "whether any sex offenders live or work on a specific street."[12] These public dissemination provisions apply to all levels of sex offenders; those classified as level two and level three offenders are subject to additional, more extensive community notification provisions. G. L. c. 6, § 178K (2).

The judge, who treated Doe as a level one sex offender for purposes of her decision, ruled that Doe had not established a likelihood of success on the merits of his ex post facto, double jeopardy, or cruel and unusual punishment claims because, she concluded, the act is not penal as applied to level one juvenile sex offenders. The judge also ruled that Doe had not established a likelihood of success on the merits of his procedural due process claim because (1) he had no constitutionally protected liberty interest in the privacy of his juvenile adjudication and (2) he was not entitled to a hearing prior to being classified initially as a level one offender. Finally, the judge concluded that the registration and notification provisions did not violate Doe's negotiated plea agreement because the act is remedial and not punitive, and therefore its provisions are collateral to that agreement.

---

[11]Section 178I provides in pertinent part: "Any person who is eighteen years of age or older, upon the verification of his age and identity, shall receive at no cost from the board a report which indicates whether an individual identified by name, date of birth or sufficient personal identifying characteristics is a sex offender as defined in [§ 178C], the offenses for which he or she was convicted or adjudicated, and the dates of said convictions or adjudications."

[12]Section 178J provides in pertinent part: "(*a*) A person who requests sex offender registry information shall: . . . (iii) state that he requests sex offender registry information for his own protection or for the protection of a child under the age of eighteen or another person for whom said inquirer has responsibility, care or custody . . . . (*b*) The person making the inquiry may either: (i) identify a specific individual by name or provide personal identifying information sufficient to allow the police to identify the subject of the inquiry; or (ii) inquire whether any sex offenders live or work within a one mile radius of a specific address, including, but not limited to, a residential address, a business address, school, after-school program, day care center, playground, recreational area, or other identified address; or (iii) inquire whether any sex offenders live or work on a specific street."

The judge denied Doe's request for injunctive relief in April, 1997. Accordingly, she did not have the benefit of several of our recent decisions addressing various challenges to the act. See note 6, *supra.* We review briefly those developments relevant to Doe's claims. In *Doe* v. *Attorney Gen. (No. 2),* 425 Mass. 217, 219, 222 (1997) (*Doe [No. 2]*), we upheld the grant of a preliminary injunction on the ground that the notification provisions of § 178I, as opposed to those in § 178J, might impose constitutionally impermissible punishment on a person convicted before the act's effective date. We noted the "absence of any apparent remedial purpose to be served by the general availability of information pursuant to § 178I." *Id.* at 222. In that case, the plaintiff twice had been convicted of open and gross lewdness, G. L. c. 272, § 16, a crime we noted "ranks at or near the bottom in seriousness" in a ranking of the sex offenses defined in G. L. c. 6, § 178C. *Id.* at 221 n.7, citing *Commonwealth* v. *Fitta,* 391 Mass. 394, 396 (1984).

Later in 1997, in *Doe (No. 3), supra* at 137, we concluded that the act denied the plaintiff procedural due process guaranteed by art. 12 of the Massachusetts Declaration of Rights by failing "to grant him a hearing and fail[ing] to require a finding, if a hearing is held, as to whether he presents a risk to children and other vulnerable persons for whose protection the Legislature adopted the registration and notification requirements of the act." In that case, the registrant, an adult, had been convicted of indecent assault and battery on a person fourteen years or older, G. L. c. 265, § 13H, after an undercover police officer arrested him in a wooded area near a rest stop "reputed to be a locale for consensual sexual activity between males." *Id.* at 138. He challenged, on due process grounds, "the absence of any statutory procedure that would permit or require a determination that a low level sex offender should not be required to register at all." *Id.* at 139. We held that the plaintiff, whom we presumed to be a level one offender (*id.*), had "sufficient liberty and privacy interests constitutionally protected by art. 12 that he is entitled to procedural due process *before he may be required to register* and before information may properly be publicly disclosed about him" (emphasis added). *Id.* at 143. We said that the Commonwealth could not deprive him of those interests without "a hearing and a determination as to whether he must register under the act and, if so, whether sex offender information concerning him should be available on request." *Id.*

at 146. The plaintiff, we held, had a right to show that he was not presently a threat to children and other vulnerable persons whom the act seeks to protect before he could be required to register. *Id.*

Finally, in *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 91 (1998) (*Doe [No. 4]*), we considered whether "an offender's constitutionally required evidentiary hearing" could be held before the sex offender registry board, and the appropriate level of proof of "the board's classification" of an offender. We concluded that such an evidentiary hearing

> "should be held before the [sex offender registry] board pursuant to G. L. c. 30A, that the appropriateness of an offender's risk classification must be proved by a preponderance of the evidence, and that the board must make specific, written, detailed, and individualized findings to support the appropriateness of each offender's risk classification."

*Id.* Both registrants in that consolidated case had been convicted of rape of a child, G. L. c. 265, § 23, and indecent assault and battery of a child under the age of fourteen, G. L. c. 265, § 13B, and each had been classified by the sex offender registry board as a level three offender. *Id.* at 95-96. We also said in that case that "[w]hether a hearing is required *as a condition of registration* for those convicted of any, or only some, of the listed offenses is not a question that has been resolved by this court" (emphasis added). *Id.* at 97 n.8. We now address those of Doe's claims not resolved by our earlier decisions.

2. *Procedural due process.* Doe claims here that, because he has protected liberty and privacy interests implicated by the registration and attendant notification provisions of the act, he must have the opportunity to be heard on the issue whether he currently is a threat to children before the Commonwealth may require him to register as a sex offender or make available to the public any of his registration information. Our function on review of the denial of a preliminary injunction is to determine whether the judge abused her discretion. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 615 (1980). We "focus on whether the lower court applied the proper legal standard and whether the record reasonably supports the lower court's

factual determinations." *T & D Video, Inc.* v. *Revere*, 423 Mass. 577, 580 (1996), citing *Packaging Indus. Group, Inc.* v. *Cheney*, *supra*. As we described above, the judge denied injunctive relief before we had issued several decisions addressing various and similar challenges to the act. In addition, while there was no testimony given in the Superior Court before the judge denied the request for injunctive relief, and therefore no credibility issue on which we would defer to her, *Packaging Indus. Group, Inc.* v. *Cheney*, *supra* at 616, the judge did not reconsider her order after she took additional evidence on remand of this case to her by a single justice of this court.[13] We therefore deal with a question of law in light of an expanded factual record, but without the benefit of the judge's views concerning widely conflicting evidence.

Registration — the requirement that a citizen regularly report to the police for an extended term of years — engages serious liberty interests, and presents an "importantly distinct kind of constitutional danger." *Doe (No. 3)*, *supra* at 149 (Fried, J., concurring). It is

> "a continuing, intrusive, and humiliating regulation of the person himself. To require registration of persons not in connection with any particular activity asserts a relationship between government and the individual that is in principle quite alien to our traditions, a relationship which, when generalized has been the hallmark of totalitarian government."

*Id.* at 149-150 (Fried, J., concurring).[14] See *Doe (No. 4)*, *supra* at 100-101 (sex offenders "have a constitutionally protected

[13]It is unclear why the judge did not reconsider Doe's due process claim on remand in light of our holding in *Doe (No. 3)*, *supra* at 137, and the taking of additional evidence. The Commonwealth requested remand "in order to reconsider the plaintiff's motion for a preliminary injunction in light of the empirical data that the State Defendants intend to submit in support of the Legislature's classification, as well as the individual facts of [Doe's] case." The single justice allowed the motion, limiting the evidence to that which the judge deemed relevant in view of *Doe (No. 3)*, *supra*. A hearing was held before the same judge who had denied Doe's motion for a preliminary injunction. An expert witness for the Commonwealth was examined and cross-examined and each side submitted numerous exhibits. The judge apparently was not asked to, nor did she, reconsider her earlier ruling.

[14]The burden of registration also subjects an offender to possible additional criminal sanctions and incarceration for failing to comply with affirmative du-

liberty and privacy interest in avoiding registration and public dissemination of registration information").

In the case of a level one offender, the engagement of that liberty interest is heightened by the public access to his registration information that the statute permits.[15] Contrary to the Commonwealth's claim, the public notification provisions of G. L. c. 6, §§ 178I and 178J, do burden the liberty and privacy interests of those whom the government seeks to regulate. Moreover, we have already concluded that a level one offender has a liberty and privacy interest protected by the Constitution of the Commonwealth implicated by the requirement that he register, the disclosure of his accumulated personal information on request, and the statutory branding of him as a public danger: a sex offender. *Doe (No. 3), supra* at 144. Those same concerns are applicable here. The burden of registration, combined with public dissemination provisions applicable to all registrants, triggers liberty and privacy interests protected by the Constitution of the Commonwealth that the Commonwealth may not impinge without procedural due process.[16] We need not pass on Doe's Federal procedural due process claim. See *Doe (No. 3), supra* at 144 & n.9.

We now consider whether Doe, adjudicated delinquent by reason of G. L. c. 265, § 23, must be afforded an individualized hearing as a condition of registration.[17] We do so by balancing "the individual interest at stake and the risk of an erroneous deprivation of liberty or property under the procedures that the State seeks to use against the governmental interest in achieving its goals." *Doe (No. 3), supra* at 140, citing *Aime v. Commonwealth*, 414 Mass. 667, 675 (1993). The Commonwealth apparently concedes — as it must — that for persons convicted

---

ties of annually appearing in person before local police officials and maintaining the accuracy of registration information. See note 4, *supra*.

[15]By way of contrast, for example, under the cognate New Jersey law ("Megan's Law"), no information is available to the public concerning a person classified as a low or tier one risk. N.J. Stat. Ann. § 2C:7-8c (West 1995). Only law enforcement agencies likely to encounter the registrant receive notification. *Id.* See *Doe (No. 3), supra* at 141.

[16]We do not conclude that Doe's protected liberty interest is based on a statutory right to confidentiality of juvenile adjudications. See part 3, *infra*.

[17]We frame the issue as one of registration because, as noted above, all sex offenders who are required to register are classified as either level one, level two, or level three offenders, and there is dissemination to the public of registry information about all offenders, including those classified as level one.

of certain offenses enumerated in the act (it does not specify or suggest which) an individualized hearing is required, notwithstanding the legislative decision to enact a general regulatory rule applicable to all offenders in those categories. See *Doe (No. 4), supra* at 97 n.8; *Doe (No. 3), supra* at 143, 146. But, it argues, the legislative decision to enact a general rule governing the entire class of persons adjudicated delinquent or convicted under G. L. c. 265, § 23, affords all the process that is due in those cases.

The crime of rape of a child, G. L. c. 265, § 23, encompasses a range of very different kinds of offenses. That crime includes any number of acts whose seriousness we well recognize, and for which general subcategories, without further particularization to the individual case, may justify regulation without an individualized hearing of the kind we described in *Doe (No. 4), supra*. But the statute also encompasses acts such as sexual experimentation among underage peers and consensual sexual activity between teenagers (commonly referred to as statutory rape). In either of these latter circumstances, the State's interest in protecting children from recidivist sex offenders might not be sufficiently urgent to warrant subjecting to registration every person convicted of those acts. *Doe (No. 3), supra* at 139 (premise underlying sex offender act is that disclosure will help protect minors and other persons vulnerable to becoming victims of sex crimes). Indeed, the expert evidence makes plain that the data concerning recidivism rates change significantly depending on circumstances just such as these. We glean from that evidence that uncertainties surround many aspects of the subject of sex offender recidivism. We cannot presume, and are not able to conclude on the basis of the record before us, that every person convicted under G. L. c. 265, § 23, will present the same risk of reoffense or a significant threat to children. While the Commonwealth sought to demonstrate that there are high recidivism rates for "child rapists and molesters," it failed to establish that there are high recidivism rates for all of the subcategories of offenders who have engaged in one of the various conducts that supports conviction under G. L. c. 265, § 23. It is not clear, for example, that the Commonwealth's use of the term "child molester" refers to an individual adjudicated delinquent by reason of G. L. c. 265, § 23, based on sexual experimentation with an underage peer. Because we can envision situations, some of which we have suggested, where the

risk of reoffense by one convicted under G. L. c. 265, § 23, may be minimal and the present danger of that person to children not significant, the general legislative category does not adequately specify offenders by risk so as to warrant automatic registration of every person convicted under that statute.

The question remains whether an individualized hearing is required in every case. Where the State seeks to impinge on a recognized liberty interest, triggering the right to procedural due process, we have held that the requirements of due process are notice and the opportunity to be heard. *Matter of Kenney*, 399 Mass. 431, 435 (1987), citing *Goldberg* v. *Kelly*, 397 U.S. 254, 267 (1970). See *Mathews* v. *Eldridge*, 424 U.S. 319, 332-335 (1976). Situations may exist, however, where the danger to be prevented is grave, and the risk of reoffense great, such that the promulgation of regulations narrowly tailored to allow for automatic registration may clarify and simplify the enforcement of the sex offender registration act in a manner that comports with procedural due process.

Such regulations may treat certain offenders — for example, those convicted of repeated crimes of violence against young children — as automatically presenting a threat to vulnerable populations. Those offenders may not be entitled to individualized hearings before being required to register. But because the deprivation of protected liberty interests in those cases will occur without an opportunity to be heard, the burden will be on the sex offender registry board to demonstrate, through appropriately promulgated regulations, that the offender is in a category that poses a grave threat to children and other vulnerable populations and that the risk of reoffense in those circumstances is compelling.[18] Offenders who fall within this category will, in any event, be entitled to a hearing in connection with their classification, *Doe (No. 4), supra* at 91.

---

[18]Even as to such conduct, due process may require some opportunity to show that for some reason — a long passage of time without reoffense, for example — the offender should be exempted from some or all of the regulations. See G. L. c. 6, § 178K (1) (*a*)-(*l*). The cognate New York act has such a provision, N.Y. Correct. Law § 168-o (McKinney Supp. 1997), and we have observed that "[t]he availability of this opportunity to seek relief from the registration requirement appears to provide an offender adequate procedural due process." *Doe (No. 3), supra* at 145. See Wash. Rev. Code § 9A.44. 140(3), (4) (West 1994) (allowing offender to petition for relief from duty to register given ten consecutive years in the community without conviction of new offenses or if offense was committed when offender was juvenile).

Offenders who fall into other categories will be entitled, prior to registration, to an individualized hearing. See *Doe (No. 4)*, *supra* at 91. The burden will be on the sex offender board to establish at the hearing that the offender poses a risk to vulnerable populations.[19] We recognize that our holdings here and in *Doe (No. 4)*, *supra*, and *Doe (No. 3)*, *supra*, potentially mandate that the sex offender board hold two such hearings — one prior to requiring an offender to register and one prior to classifying that same offender. We leave to that board's discretion the determination whether to consolidate the two hearings.[20] In the absence of such regulations, we express no view regarding which category would include Doe.

Those adjudicated delinquent or convicted under G. L. c. 265, § 23, are entitled to an individualized hearing to determine whether they are required to register absent the sex offender board's promulgation of regulations that identify with particularity for each subcategory of offender and offense the fit between the remedial measure sought by the Commonwealth (registration and public dissemination of registry information) and the danger to be averted (protecting children from harm). See *Opinion of the Justices*, *supra* at 1224-1225. Registration is a stringent regulatory regime, permissible only "where the danger is great and the measures are carefully calibrated to the needs of the particular case." *Doe (No. 3)*, *supra* at 148 (Fried, J., concurring). The burden is on the sex offender board to establish that certain conduct justifies automatic registration in each case.

3. *Enforcement of the plea agreement.* Independent of his constitutional claims, Doe contends that he is entitled to enforcement of his plea agreement. He argues that he agreed to waive his constitutional right to seek an acquittal in exchange for an

---

[19]We do not address the details of the plethora of scientific research submitted in the Superior Court regarding the statistical likelihood that a convicted sex offender will reoffend. We leave to the boards, through their legislatively delegated rulemaking authority, which subcategories of conduct, based on the likelihood of recidivism by particular offenders, are appropriate for the procedures we have identified.

[20]We recognize that the act delegates to the sex offender board the authority to promulgate guidelines in the context of classification. Our conclusion that an individualized hearing before the sex offender board is required, absent regulations promulgated by that board, in our view is consistent with the act, given the inextricable link between the regulations we suggest and the classification guidelines, and given that the classification hearing is held before the sex offender board. See *Doe (No. 4)*, *supra* at 91.

agreement by the Commonwealth to treat him as a juvenile. Doe makes no claim that there was any express promise by any prosecutor that his records would be treated as confidential. Rather, he says, the confidentiality of his records was "an immediate, automatic and inescapable consequence" of that "exchange," and the confidentiality provisions mandated by various statutes governing juvenile adjudications, in effect at the time of his plea agreement,[21] constituted "an element" of his plea agreement that he is entitled to enforce. We conclude that the operation of the statutes did not create an enforceable term of Doe's plea agreement.

Our decision in *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210 (1997) (*Doe [No. 1]*), informs our resolution of this issue. In that case we addressed the apparent conflict between G. L. c. 119, § 60A, providing for the confidentiality of juvenile adjudications, and the notification provisions of the act.[22] We concluded that "[t]he explicit legislative requirement that a discrete portion of juvenile court records be disclosed pursuant to the disclosure provisions of the sex offender act must prevail over the more general rule of confidentiality afforded to delinquent juveniles in G. L. c. 119, § 60A." *Doe (No. 1), supra* at 216. We determined that the plaintiff's due process claim in that case "depended on the continued existence of a statutory right of confidentiality as to his delinquency conviction." *Id.* We rejected his claim that he had such a right. *Id.*

Although that case involved a statutory challenge to the notification provisions, rather than a contractual challenge based on a plea agreement, Doe's claim here is, in essence, the same. While he fashions his argument in contractual terms, he relies

[21]Doe makes reference at various times to G. L. c. 119, § 53 (juvenile proceedings not criminal), § 60 (delinquency adjudication inadmissible in subsequent proceedings), § 60A (juvenile records withheld from public inspection), and § 65 (juvenile session separate).

[22]Effective October 1, 1996, the Legislature amended G. L. c. 119, § 60A, reducing certain protections available to juvenile offenders. *Doe (No. 1), supra* at 212-213 & n.7. The amendment preserved the confidentiality of a delinquent juvenile's court record applicable at the time of Doe's plea agreement. *Id.* at 213. Effective October 1, 1996, the Legislature also enacted the sex offender act. The act requires the dissemination of juveniles' sex offender information. The plaintiff in *Doe (No. 1), supra* at 211, like the plaintiff in this case, was adjudicated delinquent prior to the effective date of the amendment to G. L. c. 119, § 60A.

on nothing more than the content of the applicable statutes.[23] The record gives no indication that the prosecutor made either an express or an implied promise of confidentiality. Because we have already concluded that there is no continuing statutory right to the confidentiality of a juvenile adjudication in the face of the act's dissemination provisions, Doe's contractual challenge also fails.

4. *Conclusion.* A judgment shall enter in the Superior Court declaring that the registration requirements and notification provisions of G. L. c. 6, §§ 178C-178O, are unconstitutional as applied to Doe in the absence of either an individualized hearing to determine whether he is a present threat to children because of the likelihood that he will reoffend or the promulgation of regulations identifying with particularity as to offender and offense the fit between the remedial measure sought by the Commonwealth (registration) and the danger to be averted. An injunction shall be entered in the Superior Court enjoining the Commonwealth from requiring Doe to register under the sex offender act and from distributing or releasing any information concerning him pursuant to that act pending either a determination adverse to him following an individualized hearing before the sex offender board or that board's promulgation of such regulations and the application of those regulations to him.

*So ordered.*

---

[23]Doe's claim that the statute affords him absolute confidentiality of his juvenile record is belied by the text of the statute. At the time Doe entered into his plea agreement, G. L. c. 119, § 60A, stated that Juvenile Court records "shall be withheld from public inspection *except with the consent of a justice of such court*" (emphasis added).