Xifaras, J.
Plaintiffs seeks a preliminary injunction[4] to the implementation and enforcement of G.L.c. 6, § 178E, the sex offender registration and notification requirements of G.L.c. 6, §§178C-178P (as amended September 10, 1999),[5] an Act Improving the Sex Offender Registry and Establishing Civil Commitment and Community Parole Supervision For Life For Sex Offenders (the “Act” or “the new Act”). For the reasons stated below, plaintiffs’ motion is ALLOWED in part and DENIED in part.

BACKGROUND

The named plaintiffs are sex offenders, as defined by the Act. A sex offender is a person
who resides or works in the commonwealth and who has been convicted of a sex offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense or a person released from incarceration or parole or probation supervision or custody with the department of youth services for such a conviction or adjudication or a person who has been adjudicated a sexually dangerous person under section 14 of chapter 123A, as in force at the time of adjudication, or a person released from civil commitment pursuant to section 9 of chapter 123A, whichever last occurs, on or after August 1, 1981.
G.L.c. 6, §178C.
Plaintiff Richard Roe was convicted of rape and abuse of a child in 1985. He is not currently confined, on probation or on parole. Plaintiff David Doe was convicted of assault with intent to rape in 1978. He is not in custody, on probation or parole. Plaintiff Vincent Voe was convicted of rape of a child in 1996. He is currently on probation. Plaintiff Phillip Poe was convicted of aggravated rape in 1992 and is currently incarcerated. Plaintiff Larry Loe was convicted of rape *149 and indecent assault and battery in March 1999, and is currently incarcerated.
At some point in the future, as required by the Act, the Sex Offender Registry Board (the “Board”) will assign the plaintiffs a threat level classification number ranging from one to three. §178K. Those classified as level one offenders are said to pose a low risk of reoffending. Level two offenders are considered at moderate risk to reoffend. And level three offenders are those who pose a high risk of reoffending. §178K. The Board must assign a threat level classification number to the commonwealth’s 13,000 to 16,000 sex offenders, including the plaintiffs.[6]
Those classified as moderate or high risks must present themselves at their local police station once a year. They must provide their current home and work address to the police at that time; they must also be photographed and fingerprinted. §178Fl/2. Those considered low risks may continue to register with the Board once a year through the mail.[7] §178F. Individuals may petition the Board to request an evidentiary hearing to challenge the assigned threat level classification and the duty to register. §178L(l)(a).
Prior to receiving a threat level classification number, sex offenders are required to provide their name, home address and work address to the Board. The Board publishes a mail in registration card for this purpose. The Board will then use the registration data to communicate with the offender: to solicit information from offenders prior to assigning a threat level and to notify the offender of the threat level when assigned. See § 178L. The Board will also provide the registration data to the Federal Bureau of Investigations (the “FBI”) for national distribution in accordance with the Jacob Wetterling Crimes against Children and Sexually Violent Offender Registration Act, 42 U.S.C. section 14071. See §178E.

DISCUSSION

I. Registration requirement
Plaintiffs assert that the Acts’s registration and notification requirements impinge upon a protected liberty interest and trigger the due process protection guaranteed by the Fourteenth Amendment, and art. 12 of the Massachusetts Declaration of Rights. They argue that prior to registration, the Commonwealth must provide offenders with a hearing to determine whether they pose a current threat to children or other vulnerable people. Plaintiffs contend that only those offenders shown to pose a threat must register.
In support of their position, plaintiffs rely on a series of constitutional challenges to the Act’s statutory predecessor, the Sex Offender Registration and Community Notification Act, G.L.c. 6, §§178C-1780 (repealed 1999) (the “prior Act”).[8] The prior Act’s registration and public disclosure provisions were found to impinge on a recognized liberty interest (privacy and the preservation of one’s reputation) and trigger the due process protections afforded by the Fourteenth Amendment and art. 12 of the Massachusetts Declaration of Rights: notice and a hearing. Doe v. Attorney General, 430 Mass. 155, 168 (1999). Accordingly, the Commonwealth was ordered to offer an individualized evidentiary hearing on the issue of dangerousness to those it wished to register as sex offenders. Id. Only those individuals determined to pose a present threat to children or other vulnerable people because of a likelihood that he or she will reoffend were required to register with the Commonwealth. Id. Plaintiffs rely heavily on the explicit holdings of those earlier challenges and argue that the Board must provide preregistration hearings.
Defendants argue that the Act, unlike the prior Act, does not impinge on a protected liberty interest, and therefore does not trigger the need for a hearing. They argue that the holdings in the earlier challenges to registration under the prior Act do not apply to registration under the new Act. Defendant points out that under the prior Act, registration information was available to the public “on demand” at their local police station. The new Act authorizes public disclosure of information on those classified as level two and three offenders only. §1781. That is to say, registration information is disclosed only after an individual has been classified a moderate or high risk of reoffending, and been afforded an opportunity to challenge that classification before the Board. Information on level one offenders, those considered a low threat of reoffending, is not disclosed to the public at all.
The new Act’s procedural safeguards on registration information’s disclosure, defendants argue, undermines plaintiffs’ due process challenge to the Act. Defendants are correct on this point. The due process requirement for preregistration hearings recognized in earlier challenges to sex offender registration is grounded in a concern to safeguard the reputation of those sex offenders who do not currently pose a threat within the community. Doe v. Attorney General, 426 Mass. 136, 142 (1997) (information on request concerning a registered sex offender threatens the reputation of the offender and stigmatizes him as a currently dangerous person). If the Commonwealth wishes to alert the public to those who pose a threat, then the Commonwealth must assure the quality of the information they disclose. Doe v. Attorney General, 426 Mass. at 142, quoting State v. Ward, 123 Wash.2d 488, 503 (1994) (“Absent evidence [that the offender posses a threat to the community], disclosure would serve no legitimate purpose”).
Under the prior Act, registration was tantamount to public disclosure. That is not the case under the new Act. All those subject to public disclosure are first provided a right to a hearing under § 1781 and a means to challenge their assigned classification and registration requirement. To the extent plaintiffs rely on a due process analysis grounded on the preservation of *150 offenders' reputations this court rejects their position. The due process concerns surrounding the protection of a liberty interest in one’s reputation, recognized in the Doe decisions, supra, are adequately addressed in the new Act. Doe v. Attorney General, 426 Mass. 142 (“The availability of information on request concerning a registered sex offender threatens the reputation of the offender and stigmatizes him as a currently dangerous person”).
Due process protection is triggered by state action that impinges on a constitutionally recognized liberty interest. Zinerman v. Burch, 494 U.S. 113, 127 (1990). If registration requires due process protection, there has to be a liberty interest beyond the protection of reputation described in Doe v. Attorney General, 430 Mass. at 163.
With or without immediate public disclosure, registration is a “stringent regulatory regime,” Doe v. Attorney General, 430 Mass. at 166, requiring due process protection. Plaintiffs point out that the “key evil” of registration is not public disclosure and the damage to reputations, but the
continuing, intrusive, and humiliating regulation of the person himself. To require registration of persons not in connection with any particular activity asserts a relationship between government and the individual that is in principle quite alien to our traditions, a relationship which when generalized has been the hallmark of totalitarian government.
Doe v. Attorney General, 430 Mass. at 162, quoting Doe v. Attorney General, 426 Mass. at 149-50 (emphasis added).
The court’s observation is grounded in the proposition that registration prior to a showing of necessity, “in principle,” violates a protected liberty interest. That liberly interest may be thought of as a “privacy interest.” Doe v. Attorney General, 430 Mass. at 163, quoting Doe v. Attorney General, 428 Mass. 90, 100-01 (1998) (sex offenders have a privacy interest in avoiding registration and public dissemination of registration information). Or perhaps the liberty interest at stake is found in “the right to be let alone — the most comprehensive of rights, and the right most valued by civilized men.” Olmstead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting). In either case, the court is satisfied that the Act’s mail-in registration requirement impinges upon a liberty interest, and triggers the procedural safeguards afforded by art. 12 of the Massachusetts Declaration of Rights.
Due process is not a fixed concept, but a flexible one depending on the particular circumstance. Zinerman v. Burch, 494 U.S. 113, 127 (1990). Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. Kahn v. U.S., 753 F.2d 1208, 1218 (3d Cir. 1985). The minimum requirements of due process, therefore, are notice and an opportunity to be heard. Matter of Kenny, 399 Mass. 431, 435 (1987) citing Goldberg v. Kelly, 397 U.S. 254, 267 (1980).
To determine what procedural safeguards are required in a given case, a court must weigh the following factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.
Zinerman v. Burch, 494 U.S. 113, 127 (1990), quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Accord, Aime v. Commonwealth, 414 Mass. 667, 675 (1993). Applying this test, the Supreme Court “usually has held that the Constitution requires some kind of hearing before the State deprives a person of liberty . . .” Zinerman, supra at 127.
Applied to the new Act, the Zinerman test, supra, weighs in the favor of preregistration hearing requirement. First, the private interest at stake is substantial. As noted, an ongoing registration requirement, prior to a showing of necessity, is alien to our traditions. Further it is reasonable to conclude that classification hearings for all those required to register, estimated to presently exceed 13,000 individuals, may be some time in the distant future. This delay compounds the individual burden.
Second, additional safeguards would ensure that this “nontraditional” condition between citizen and state would occur only when justified by the risk posed by an offender. With each registration requirement comes the risk of incarceration. Without preregistration safeguards, one who posses no discernable threat to the community, one who, if he had a preregistration hearing would be freed of his duly to register, could be incarcerated for failing to register.
Finally, preregistration hearings do not seriously burden the government interest in offender registration. The Commonwealth provides two interests furthered by immediate registration. First, registration promotes administrative convenience. Defendants argue that registration will facilitate efficient contact with offenders to schedule classification hearings. §178. Preregistration hearings, and the individual safeguard they ensure, is not an unreasonable burden on the Commonwealth’s administrative interest.
Defendants also argue that immediate registration is necessary to assist law enforcement in their efforts to investigate and combat sexual abuse. Preregistration hearings are not an unreasonable burden on that state interest, either. If law enforcement will rely on •the registration list, then there should be safeguards in place to make sure that the list contains individuals *151 who are a present threat; otherwise, the list is of limited use to law enforcement. The additional safeguard of the preregistration hearing will ensure that law enforcement has more accurate data to use in their investigation: those who no longer pose a threat to children or other vulnerable people will be weeded out during preregistration hearings and allow law enforcement to focus on others.
In sum, the court is satisfied that there is a protected liberty interest impinged by sex offender registration, and that those required to register should be afforded an opportunity to establish that their registration does not further the Act’s over all purpose. Registration divorced from community protection serves no legitimate purpose.
Finally, defendant argues that, if this court finds a protected liberty interest in mail-in registration, the Act provides “whatever process [those required to register] maybe due” in c.6, §§178E(e), 178E(f), and 178G: portions of the Act under which individuals may be freed from the registration requirement. Defendants’ argument deserves careful consideration, in that the Court in Doe v. Attorney General, 426 Mass. at 145, noted that the “opportunity to seek relief from registration requirements appears to provide an offender adequate procedural due process.” As an example, the court noted that under New York’s statute, each person required to register may petition his or her original sentencing court to be relieved of the duty to register. Id.
The Act does not afford sufficient meaningful due process protection to altogether avoid injunctive relief Defendants’ argument notwithstanding, the right to petition for relief from the registration requirement twenty years following conviction, under §178G, does not justify imposing a present registration requirement. Similarly, that the Commonwealth may move under §178E(e) to release an individual from the registration requirement of §§178C-178G is not a due process right.[9]
But, to the extent that §178E(f) affords a hearing to those convicted after December 12, 1999, but not immediately confined, it provides those offenders sufficient preregistration due process protection. In accordance with the Act, those deemed to pose no risk of reoffending or danger to the public, as provided for in § 178E(f), shall not be required to register. Those not relieved of the duty to register following a hearing provided for by §178E(f) shall be required to register.
H. Failure to register
In addition to an injunction of the Act’s registration requirement, plaintiffs seek to enjoin the arrest and prosecution of those who fail to register. The court fails to see the need for the requested relief. Rather, the court agrees with the defendants that such relief is barred by the holdings in Norcisa v. Board of Selectmen of Provincetown, 368 Mass. 161, 168 (1975), and Bunker Hill Distributing, Inc. v. District Attorney for Suffolk County, 376 Mass. 142 (1978) (injunctive relief inappropriate absent pending litigation).
In the event that those who would be required to register, but for the relief granted herein, are arrested or prosecuted for failing to register, they may raise this injunction in their defense.
III. The F.B.I.
The court is also unconvinced by plaintiffs’ argument that the court should enjoin distribution of information to the F.B.I. in accordance with the Jacob Wetterling Crimes against Children and Sexually Violent Offender registration Act, 42 U.S.C. §14071 (the “Wetterling Act”).
The Wetterling Act does not presently provide for direct community notification, and plaintiffs’ speculation that it may do so in the future is not a sufficient basis for relief. To the extent registration information is collected subsequent to the relief herein granted, this court does not enjoin its dissemination to the F.B.I., as described in the Act.

ORDER

Plaintiffs’ request for injunctive relief is ALLOWED, to the extent that defendants, their agents, or servants are enjoined from requiring members of the class, as defined in this court’s order of class certification dated November 24, 1999, to comply with the registration provisions of G.L.c. §178E, without first affording them an individualized evidentiary hearing to determine whether they are currently dangerous to children or other vulnerable persons. Nevertheless, the Commonwealth is free to move to relieve an offender’s registration requirement under §178E(e). Proceedings before a sentencing court under 178E(f) are likewise not enjoined.
Plaintiffs’ remaining requests for injunctive relief are DENIED. Defendants are not enjoined from arresting and prosecuting those who unlawfully fail to register. Likewise, defendants are not enjoined from furnishing sex offender information to the F.B.I., as authorized by the Act and the Wetterling Act.

A temporary injunction issued in this matter on November 5, 1999.

As inserted by St. 1999, c. 74.

More properly, the Board must assign a threat level classification level, or determine that the offender is not a present threat of reoffending. Some offenders, but not all, determined to pose no future risk of reoffending may be freed from the duty to register. Registration is mandatory if a sex *152 offender has been determined to be a sexually violent predator; has been convicted of two or more sex offenses defined as sex offenses pursuant to the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. section 14071, committed on different occasions; or has been convicted of a sexually violent offense. Also, an offender may not avoid registration if convicted of a sex offense involving a child or a sexually violent offense, and such offender has not already registered pursuant to the Act for at least ten years, or if the sex offender is otherwise subject to lifetime or minimum registration requirements as determined by the board pursuant to section 178D. §178K(2)(d). The Act is silent on the matter of assigning a threat level in the case of individuals who do not pose a current threat, but who nevertheless must register.

A sex offender who lists a homeless shelter as a residence must verify registration data every 90 days. §178F.

See Doe v. Attorney General, 430 Mass. 155 (1999); Doe v. Sex Offender Registry Board, 428 Mass. 90 (1998); Doe v. Attorney General 426 Mass. 136 (1997); Doe v. Attorney General, 425 Mass. 217 (1997); Doe v. Attorney General, 425 Mass. 210.

That is not to say that the Commonwealth may not move under §178E(e), when appropriate, to release an individual from their registration requirement. But the mere fact that the Commonwealth may do so if it wishes does not diminish the requirement of notice and a hearing prior to registration.