Hines, J.
INTRODUCTION
Plaintiff John Doe brings this action pursuant to G.L.c. 30A, §14 and G.L.c. 6, §178M seeking judicial review of the decision by the Sex Offender Registry Board (the “Board”) requiring him to register as a sex offender and classifying him as a Level Three Sex Offender.[1] For the reasons set forth below, this case is REMANDED to the Board for specific findings.
BACKGROUND
The Board is an administrative agency constituted under the laws of the Commonwealth of Massachusetts. It is charged with establishing and maintaining a central computer registry of all sex offenders and determining whether an offender is required to register as a sex offender and, if so, what classification level will be assigned to the offender. See G.L.c. 6, §178K. “Sex offender” is defined as “a person who resides or works in the commonwealth and who has been convicted of a sex offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense or a person released from incarceration or parole or probation supervision or custody with the department of youth services for such a conviction or adjudication or a person who has been adjudicated a sexually dangerous person under section 14 of chapter 123A, as in force at the time of adjudication, or a person released from civil commitment pursuant to section 9 of said chapter 123A, whichever last occurs, on or after August 1, 1981.” G.L.c. 6, §178C.
The Board’s regulations identify four specific criteria that it must adhere to when undertaking its initial determination of whether a sex offender has a duty to register. See 803 CMR §1.06(2). The criteria are: (1) whether the offender’s criminal history indicates at least one conviction or adjudication for a sex offense as defined by G.L.c. 6, §178C; (2) the offense is sexual in nature; (3) the offender lives or works in the Commonwealth; and (4) he currently poses a danger. Id. In determining whether a sex offender currently poses a danger, the Board looks at such factors as the offender’s criminal history, the circumstances of the sex offense, the presence or absence of physical harm caused by the offender, whether the offense involved consensual conduct between adults, and other factors which tend to demonstrate whether or not the offender is likely to re-offend. See 803 CMR §1.06(3).
If the Board determines that an offender is required to register, it must prepare a recommended classification level for the offender, pursuant to the guidelines contained in 803 CMR §§1.38-1.41. See 803 CMR §1.06(4). The Board developed the Massachusetts Statutory Factors Inventory (“MSFI”) which includes each factor governing risk of re-offense as set forth in G.L.c. 6, §178K. See 803 CMR §1.39(2). A numerical value is assigned to all but four of the factors. See 803 CMR §1.39(3). MSFI was developed to provide an objective standard on which to base each recommended classification to ensure that all recommendations would be determined in a uniform manner. 803 CMR § 1.39(2). The total score of the MSFI is calculated by adding the points the offender scores in each factor. Id. If the total score is negative four or less, the recommended level or range of risk is low; if negative three to five, the recommended level or range of risk is low to moderate; if six to nineteen, the recommended level or range of risk is moderate to high; and if twenty or more, the recommended level of risk is high. Id. A level 1 classification is given if the Board finds there is a low risk of re-offense and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability of registration information. A level 2 classification is given if the Board determines that the risk of re-offense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information. A level 3 classification is given if the Board determines that the risk of re-offense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination of registration information. See G.L.c. 6, §178K(2)(a)-(c).
The offender’s risk level determines the amount of information that can be disseminated about him to the public under G.L.c. 6, §§178C-178P’s notification procedures. The public does not have access to a Level 1 offender’s information. Certain qualified members of the public can obtain a Level 2 offender’s information. *112 When someone is classified as a Level 3 offender, his information is actively disseminated by local police agencies.
Once an offender receives notice from the Board of its initial recommended classification, he can request an evidentiary hearing to determine his future duty to register and his final classification. See G.L.c. 6, §178L(l)(c). If the offender requests a hearing, the Chairman may appoint either a member of the Board, a panel of three Board members, or a hearing examiner[2] to conduct the hearing and to determine the offender’s duty to register and final classification. See G.L.c. 6, §178L(1)(2). The hearing is a de novo review and is limited to determining by a preponderance of the evidence whether the offender has a duty to register and, if so, what the appropriate classification should be. See 803 CMR §1.10(1). In reaching a decision, the hearing examiner is required to consider the statutory factors enumerated in G.L.c. 6, §178K(l)(a)-(1) in a manner consistent with the Guidelines for Recommended Classification located at 803 CMR §§1.38-1.41. See 803 CMR §1.22(2). The hearing examiner’s decision is the final Board decision and the final agency action for purposes of judicial review. See 803 CMR §1.23.
An offender can seek judicial review of the Board’s final classification pursuant to G.L.c. 6, §178M and G.L.c. 30A, §14. The court must reach its decision within 60 days of the offender’s petition for review. See G.L.c. 6, §178M. The court proceedings are kept confidential and the proceedings and records must be impounded. See id.
On March 16, 1994, the plaintiff received a 5-7 year sentence for aggravated rape and a 5-7 year suspended sentence with two years probation for rape. He was released from prison on May 27, 2000 and will be on probation through May 27, 2002 with the Suffolk Superior Court. On February 21, 2001, the Board notified the plaintiff that his recommended classification was as a Level 3 offender. The plaintiff requested a hearing and one was held on May 22, 2001 before a Hearing Examiner (“Examiner”). The plaintiff argued that, at most, he was a Level 2 offender. On August 6, 2001, the Board notified the plaintiff that the Examiner had also found him to be a Level 3 offender. On September 6, 2001, the plaintiff filed a petition for judicial review in this Court and also filed an ex parte motion for stay of registration and dissemination. I granted the plaintiffs motion as to dissemination but ordered the plaintiff to register. A hearing was held on September 10, 2001.
DISCUSSION
In reviewing an administrative appeal pursuant to chapter 30A, the court is constrained to limit its review to the record. See She Enterprises, Inc. v. State Bldg. Code App. Bd., 20 Mass.App.Ct. 271, 273 (1985), review denied, 396 Mass. 1102. In so reviewing the record, deference is given to the specialized knowledge, expertise, and experience of the administrative agency which rendered the decision. See G.L.c. 30A, §14. The reviewing court may not substitute its own judgment for that of the administrative agency. See Southern Worcester County Reg. Voc. Sch. Dist. v. Labor Relations Comm'n., 386 Mass. 414, 420-21 (1982), citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n., 372 Mass. 152, 154 (1977). A court may not dispute an administrative agency’s choice between two conflicting views, even thought the court would justifiably have made a different choice had the matter come before it de novo. Seagram Distillers Co. v. Alcoholic Beverages Control Comm'n., 401 Mass. 713, 721 (1988). The plaintiff has the burden of demonstrating that the agency’s decision was invalid. See Merisme v. Board of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989).
The plaintiff argues that the Board’s decision should be set aside for four reasons. First, he argues that the Examiner committed an error of law when he failed to follow the analysis set forth in 803 CMR §1.39(2) but instead conducted a “qualitative analysis.” Second, he argues that the Examiner erred in considering Factor 7 against the plaintiff. Third, he argues that the Examiner erred in considering Factor 20 against the plaintiff. Finally, he argues that the Examiner erred by conducting the hearing without the benefit of expert testimony.
The plaintiffs arguments call into question the Board’s interpretation of its own regulations. The courts give deference to an agency’s interpretation of its own rules. Boston Preservation Alliance, Inc. v. Secretary of Environmental Affairs, 396 Mass. 489, 497 (1986). However, that deference is not abdication of inspection. See Finkelstein v. Board of Registration in Optometry, 370 Mass. 476, 478 (1976). The regulation must be constitutionally sound and consistent with enabling statutes. Boston Preservation Alliance, Inc., supra at 498; Finkelstein, supra at 478. The duration and consistency of the agency’s application of the regulation will also factor into the court’s respect for the interpretation. See Boston Gas Co. v. Department of Pub. Utils., 367 Mass. 92, 104 (1975).
EXAMINER’S ANALYSIS OF FACTORS CONTAINED IN 803 CMR §1.40
In preparing a recommended classification, the Board relies on the MSFI to calculate a point-based score which translates into the appropriate level of risk presented by the offender. This numerical value allows the Board to make an objective, rather than a subjective, recommendation as to classification. Presumably the Board conducted a numerical analysis in determining that the plaintiff was a Level 3 offender. However, the Examiner conducted a “qualitative” analysis in which he assigned whatever weight he chose to the factors outlined in 803 CMR §1.40. He stated in his decision that “(T]he foregoing factors may be present *113 to varying degrees in any given case, and the Board’s review does not involve a cumulative analysis of the factors present, but rather a qualitative analysis of the particular facts of any given case.” The plaintiff argues that the Examiner committed an error of law in undertaking a qualitative analysis because 803 CMR §1.39(2) requires him to conduct a cumulative analysis of the factors present in order to come up with a point-based score. The Board argues that the plaintiff has misinterpreted the regulations in asserting that the Examiner is bound by 803 CMR §1.39(2) to conduct a cumulative analysis and instead argues that this section only applies to the Board when it prepares its recommended classification. Since the Examiner’s decision is the final agency decision based on the evidence adduced at the hearing, the defendant argues that the Examiner properly concluded that the plaintiff was a Level 3 offender based on the evidence as a whole that was introduced at the hearing.
G.L.c. 6, §178K requires the Board to implement guidelines for determining an offender’s risk of re-offense and degree of dangerousness to the public. In creating the statute, the legislature listed specific factors which would need to be included in said guidelines. This section further required the Board to apply these guidelines to assess the risk level of particular offenders. The Board fulfilled this mandate when it implemented the MSFI which includes all the factors articulated by the legislature in G.L.c. 6, §178K.
Based on these instructions, the Board created and implemented its regulations which became effective as of January 2001. Though there are few if any cases interpreting the regulations, the plain language provides adequate guidance to the court in resolving the issues presented by the parties.[3] In accordance with 803 CMR §1.22(2), the “[ejxaminer shall consider the statutory factors and other evidence in a manner consistent with the Guidelines for Recommendation Classification found at 803 CMR §§1.38 through 1.41.” These provisions of the regulations lie at the core of the required due process protections and they establish an objective procedure for determining a particular offender’s classification level.
If the purpose of the MSFI is to provide an objective means by which a particular offender’s classification can be determined, then the defendant’s position, if accepted, would render 803 CMR §1.39(2) meaningless. It is difficult to imagine that the requirements of 803 CMR §1.39(2) disappear when an offender requests a hearing. That is not to say that the Examiner is bound by the Board’s recommendation. Precisely the opposite is true and the plaintiff has not argued otherwise. However, this Court can find no possible rationale for allowing an Examiner to depart from the method set forth in 803 CMR §1.39(2). The point of that section is to provide a numerical method for determining an offender’s classification. There is no support in either the statute or the regulations for the proposition that an Examiner is allowed to place whatever emphasis he chooses on whatever factors he chooses to analyze. In fact, the plain language of the regulations, as written by the Board itself, requires the Examiner to consider the statutory factors in a manner consistent with the guidelines found in 803 CMR §§1.38-1.41. See 803 CMR §1.22(2). It seems more likely that this section means that the Examiner, although conducting the hearing de novo and not being bound in any way by the Board’s recommendation, still has a duty to follow the regulations in the same manner as the Board.[4]
An Examiner is either a member of the Board or someone employed or contracted by the Board. It is difficult to imagine why a Board member would be required to follow the numerical analysis when making a recommendation but could be entitled to unfettered discretion when sitting as an Examiner. This cannot be what the legislature intended and nor is it required by the Board’s own regulations.
The purpose of the MSFI factors is to provide an objective means by which an offender’s risk of re-offense can be evaluated. Allowing an Examiner to completely disregard the force of these rules subverts the statute’s purpose. Given the magnitude of the offender’s liberty and privacy interests[5] the Board cannot be allowed to conduct a process which does not strictly follow the letter and spirit of its enabling statute and regulations. A deviation from these objective guidelines which results in an incorrect classification could quickly cause irreparable damage to an offender’s earning capacity and reputation and, more importantly, could unfairly brand him as a public danger. “Deprivation of greater individual liberty interests requires greater procedures and stronger countervailing State interests.” Doe v. Attorney Gen., 426 Mass. 136, 140 (1997), citing Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976); Opinion of the Justices, 423 Mass. 1201, 1231 (1996).
Although an agency’s interpretation of its own rules is entitled to great deference, the Board’s interpretations here are clearly erroneous. An agency’s regulations should be applied in accordance with the plain language of the relevant provision and in a manner consistent with the purpose of the enabling statute. See Massachusetts Coalition for the Homeless v. Secretary of Executive Office of Health & Human Servs., 422 Mass. 214, 226-27 (1996). The statute at issue was rewritten in 1999, after being in effect for only three years. See Roe v. Attorney Gen., 434 Mass. 418 (2001). As early as 1997, the Supreme Judicial Court held that the sex offender registration and notification requirements were unconstitutional in part. See Doe v. Attorney Gen., 426 Mass. 136 (1997). Similar decisions followed and in 1999, the Legislature repealed the 1996 statute and enacted the current 1999 statute in an apparent effort to comply with the due process requirements as articulated by the SJC. See Roe v. *114 Attorney Gen., supra. The flaws in the original statute stemmed from its failure to provide adequate due process to offenders. See, e.g., Doe v. Attorney Gen., 425 Mass. 217 (1997); Doe v. Attorney Gen., 426 Mass. 136 (1997); Doe v. Sex Offender Registry Bd., 428 Mass. 90 (1998); Doe v. Attorney Gen., 430 Mass. 155 (1999). The new version of the statute is intended to remedy those flaws. The Board’s interpretation of its regulations in the circumstances of this case and particularly in light of the due process concerns repeatedly articulated by the SJC, negates that purpose. Where an agency’s interpretation of its regulation cannot be reconciled with the governing legislation, that interpretation must be rejected. Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Bd., 421 Mass. 196, 211 (1995).
Finally, the state of the record before this court on plaintiffs petition for review of the final agency decision provides further support for this interpretation of the regulations. When, as here, an Examiner erroneously considers certain Factors against an offender, the Examiner’s failure to use the numerical analysis prevents the court from determining whether the Examiner’s error is harmless. If the Examiner had followed §1.39(2), this Court might have ultimately found that the errors in including Factors 7 and 20 do not actually affect plaintiffs classification as a Level 3 offender. However, because the Examiner used a subjective analysis, I am unable to do so.
FACTOR 7
In his decision, the Examiner included a section which provided the factors he viewed as tending to indicate a heightened risk of re-offense and public safety danger. He included Factor 7, entitled “Relationship between Offender and Victim.” This factor, as well as all the others, was implemented pursuant to the legislature’s mandate in G.L.c. 6, §178K(l)(b)(i). It states that “[rjesearch indicates that the relationship between the offender and victim is a highly important factor in determining the risk to reoffend and the degree of dangerousness posed to the community. The relationship illustrates the vastness of the offender’s pool of potential victims.” The Board assesses points as follows, only scoring the item with the higher number of points:
(a) three points to the offender who has offended against any stranger. Stranger is defined as any person who has not known the offender for more than 24 hours prior to the offense or who has not established any type of relationship. This relationship will be considered from the victim’s perspective; or
(b) two points to the offender who has offended against any extrafamilial victim. Extrafamilial is defined as a person who has a recognizable relationship with the offender, such as a friend, coworker, acquaintance, family member substitute (e.g., adoptive, foster and step relatives) for less than two years prior to the offending behavior, etc.
Under Factor 7, the Examiner stated that “although Greenwood and the victim were acquainted they were not related.” Although a true statement, that fact actually bolsters the plaintiffs argument that the classification is erroneous. Points are only added under Factor 7 if an offender has known his victim for less than 24 hours or if the offender had a relationship with an extrafamilial victim for less than two years. Here, the Examiner found that the plaintiff had known the victim for almost four years. Therefore, the victim was neither a “stranger” nor an “extrafamilial victim.” This factor should not have been included in assessing the plaintiff s risk of reoffense and public safety danger and doing so was an error of law.
Additionally, this issue further illustrates the need for the Examiner to comply with 803 CMR § 1.39(2). If the Examiner had done a cumulative analysis, the court would be able to assess the weight of this factor relative to the ultimate decision. If that had been done, the court could make an informed determination as to whether the Examiner’s error actually impacted the plaintiffs final classification. As it stands, Factor 7’s importance is unclear and this Court can not decipher whether the exclusion of this Factor would have affected the Examiner’s decision.
FACTOR 20
The Examiner cited the plaintiff s seven disciplinary reports while incarcerated as indicative of a heightened risk of re-offense. Factor 20 allows the Board to “assess two points to an offender who received two or more disciplinary reports during the period up to the last 24 months of any incarceration he has had five years prior to the date of the assessment.” The plaintiff was released from prison on May 27, 2000. His last disciplinary report is dated June 17, 1998. That is the only disciplinary report the plaintiff received in his last 24 months in custody. The Examiner erred as a matter of law in including the seven disciplinary reports as evidence of the plaintiffs likelihood of re-offense. The regulation specifically mandates that Factor 20 only applies to those offenders who received disciplinary reports during their last 24 months in prison. The Examiner was not free to bypass these rules and consider information specifically excluded by the regulation.
Again, if the Examiner had performed a cumulative analysis, the court would be able to determine whether his erroneous inclusion of the plaintiffs disciplinary reports affected his decision such that the outcome would have been different. However, since this was not done, this case must be remanded so that the Examiner can conduct a cumulative analysis pursuant to 803 CMR § 1.39(2) and without the inclusion of Factors 7 and 20.
*115 EXPERT TESTIMONY
The plaintiff argues that absent expert testimony, the Examiner was not qualified to determine the plaintiffs risk of re-offense. This argument lacks merit for several reasons. First, the rules of evidence observed by courts do not apply to hearings before the Board. See 803 CMR §1.19(1). Second, 803 CMR §1.09(2) states, in relevant part, that “(I]n a particular case where the Board intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the registration status and classification hearing, said notification shall inform the sex offender or his Authorized Representative of this intention.” [Emphasis supplied.] Additionally, G.L.c. 6, §178L(1)(c) states that “the board may grant payment of fees for an expert witness in any case where the board in its classification proceeding intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding.” Given the plain language of both the regulations and the enabling statute, it seems clear that the legislature did not intend to require expert testimony in registry proceedings.[6] Furthermore, the Examiner is entitled to substantial deference in interpreting the statutory and regulatory factors and his interpretation will be upheld as long as it is reasonable. Boston Preservation Alliance, Inc. v. Secretary of Environmental Affairs, 396 Mass. 489, 497 (1986).
CONCLUSION
For the reasons set forth above, this matter is remanded to the Board for re-classification pursuant to its regulations as set forth in 803 CMR 1:38-40. Though the statute is clear that “the filing of an action under this section shall not stay the effect of the Board’s classification,” this court is not precluded from granting injunctive relief in appropriate circumstances after a hearing and consideration of the facts of a particular case. I interpret the above language as prohibiting an automatic stay upon the mere filing of an action and without regard to the merits of the case. The abbreviated sixty-day time limit for final judicial decisions and the court’s repeated emphasis on the need to accommodate due process protections both weigh against an absolute prohibition of a stay. This reading of the statute is consistent with G.L.c. 30A which explicitly authorizes a court to stay an agency’s decision “upon such terms as it considers proper.” G.L.c. 30A, §14(3).
ORDER
It is ORDERED as follows:
This case is REMANDED to the Sex Offender Registry Board for a cumulative analysis, pursuant to 803 CMR § 1.39(2), of the evidence adduced at the hearing. This analysis shall not include Factors 7 and 20 of 803 CMR §1.40.
The Sex Offender Registry Board is enjoined, until further order of the Court, from distributing or releasing any sex offender registry information concerning the plaintiff, pursuant to G.L.c. 6, §§1781 and 178J, in the absence of a final determination in accordance with 803 CMR §1.38-1.40 that the plaintiff is a Level 3 offender.

 Although plaintiff initially suggests that he is challenging the Board’s decision as to registration and classification, he later concedes that he is a Level 2 offender and, therefore, the court will not address the first issue.

 A hearing examiner is an individual employed or contracted by the Board or is a single member of the Board, appointed by the chair to conduct administrative hearings to determine by a preponderance of the evidence an offender’s duty to register and final classification level. See 803 CMR §1.03.

 Indeed, the duration and consistency of the agency’s application of the regulations factors into a court’s deference to the agency’s interpretation. See Boston Gas Co. v. Department of Pub. Utils., 367 Mass. 92, 104 (1975). Here there is no history that informs settled expectations of affected parties or that compels acceptance of the agency’s interpretation.

 The defendant itself is apparently confused by this as well as it states at one point that “the Examiner is the finder of fact and must apply the statutory factors as they appear in the Agency’s enabling legislation (G.L.c. 6, §178K(1)(a-1)).”

 In Doe v. Attorney Gen., 430 Mass. 155, 161 (1997), the Supreme Judicial Court stated that “[t]he burden of registration, combined with public dissemination provisions applicable to all registrants, triggers liberty and privacy interests...”

 Contrast with the Sexually Dangerous Persons (“SDP”) provisions in G.L.c. 123A, created by the same legislation as the Sex Offender Registry Statute, which requires the testimony of two qualified examiners in all SDP proceedings.